MABEL A. PARKER & another, executors, & others *vs.* ELIZA M. PAGE & others.

Essex.    December 5, 1929. — January 27, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Frauds, Statute of.  Equity Jurisdiction,* Specific performance.  *Estoppel.*

One conducting a business orally agreed to sell it, including land, buildings, machinery, equipment and stock in trade, upon certain terms. He later accepted a deposit, acknowledging it in writing as "part consideration of the agreement price . . . for the sale of" said business. He told his employees that he had sold the business. In his absence, the purchaser went to the place of business, gave orders to the employees and "generally acted as an owner would act." The seller upon his return did not instruct the purchaser to curtail his activities. The purchaser then was placed on the payroll of the business and continued his activities with the tacit consent of the seller. The purchaser, who was sixty-nine years of age, gave up a position with another company

in reliance on the expectation that the agreement of purchase would be carried through. He submitted to the seller an agreement of sale in writing, but the seller disapproved of certain clauses therein and, after further negotiations, refused to sign the agreement. The purchaser was paid his salary up to a certain date, about a month after he had first become active in the business, and then was notified by the seller to leave the place of business. He was refused reëmployment by his previous employer and was unable to secure other employment in the same line of business or to adapt himself to other lines. In a suit in equity thereafter commenced by him for specific performance, it was *held*, that

(1) The writing signed by the defendant and acknowledging the deposit was not a memorandum sufficient to satisfy the statute of frauds, G. L. c. 259, § 1, with respect to the land included in the oral agreement of sale;

(2) Since, although the plaintiff had been in possession of the land for a month and had changed his position with regard to his employment, he had not paid the entire purchase price and had not improved the land, there was not, in the circumstances, sufficient part performance to satisfy the statute of frauds;

(3) In the circumstances, the defendant was not estopped to rely on that statute;

(4) The plaintiff was not entitled to specific performance.

BILL IN EQUITY, filed in the Superior Court on April 27, 1928, and afterwards amended, by Thomas B. Parker, Henry Silsbee, L. Henry Whittredge, William J. Young and Lewis W. Kenney, against Eliza M. Page, Mark Shrum and Naumkeag Trust Company, individually and as executors of the will of Fred M. Page.

The bill is described in the opinion. It contained also an allegation that "your plaintiff, Parker, being unable to finance said proposition [the purchase from the defendants described in the opinion] alone, then interested and induced the other plaintiffs hereinbefore mentioned to furnish and provide him with sufficient funds in addition to his own to make said purchase upon a cash basis, upon the understanding and agreement that he with their assistance and participation should organize a Massachusetts corporation to take over all of said property and carry on said business and issue, or cause to be issued, for said assets to said Whittredge, Young, Silsbee, Kenney and himself shares of stock of the value of and equal to at least the amount of money which they thus agreed to furnish for said purpose

and in the proportion of their several contributions; that said plaintiff, Kenney, was reluctant to enter into said proposition and invest any money therein but was induced to do so in order to consummate the sale; that thereafter in consequence of their said mutual agreement all of said plaintiffs consulted and worked together for the consummation of said proposition and, therefore, have all been joined as parties plaintiff."

The bill contained prayers for damages and also the following, among others:

"10. that the defendants and each of them be ordered to specifically perform said contract and forthwith redeliver or deliver the possession of said real estate, personal property and assets to your plaintiff, Parker, in accordance with and upon the terms thereof upon the payment to them of the balance of the purchase price and execute and deliver to him all necessary and proper deeds, releases, bills of sale, assignments and other documents necessary to convey full and clear title thereto and that a mandatory injunction issue to that effect and for that purpose;

"11. that said defendants and each of them be ordered to account for their acts and conduct in reference to and disposition of said assets and business since ejecting your said plaintiff, Parker, from the possession thereof;

"12. that in the event of a decree ordering specific performance, as above prayed for, this Honorable Court will ascertain and decree the amount of damages which each of your plaintiffs is entitled to in addition to such specific performance in consequence of the repudiation of said contract by the defendants;"

"14. that said defendants and each of them be forthwith enjoined and restrained from conducting and carrying on said business with said assets, or any part thereof, or incurring any obligations in reference thereto until the further order of this court."

The suit was referred to a master, material findings by whom are stated in the opinion. By order of *F. T. Hammond*, J., there were entered an interlocutory decree confirming the master's report and denying a motion by the

plaintiffs for recommittal to the master, and a decree ordering specific performance as sought by the plaintiffs and recommitting the case to the master for assessment of the damages of the plaintiff Parker. The plaintiffs appealed from the interlocutory decree. The suit thereupon was reported by the judge for determination by this court of the propriety of the second decree. After the report of the case, the plaintiff Parker died and the executors of his will were admitted to prosecute the suit.

*F. E. Shaw,* for the plaintiffs.

*E. C. Jacobs,* (*G. J. Tauro* with him,) for the defendants.

RUGG, C.J.    This is a suit in equity for specific performance of an oral contract for the sale of property used in the business of Fred M. Page, deceased. The defendants are the executors of his will and the trustees named therein. Mrs. Page is his widow. By the fifth paragraph of the will his executors were authorized to sell his real and personal estate at private or public sale for the payment of debts or for the distribution of his estate.

The case was referred to a master. No evidence is reported. The findings of the master must be accepted as true. Thus it appears that Page, at the time of his death, was engaged in the manufacture and sale of shoe stays, findings and labels, in Lynn. The property used in the business consisted of buildings, machinery, equipment, stock in trade, and two parcels of land, one of which was registered. The registered tract was subject to a mortgage of $11,500. On December 28, 1926, the executors were duly licensed to conduct the business of the testator for six months. After this period had passed, the business was carried on by them, Mrs. Page giving to the other executors an agreement that they would not be liable for any losses of the business, and that such losses would be borne by her. She had been the bookkeeper of Page and the master found that she was familiar with the business and managed its affairs. One Moore was the factory superintendent and Earp was the bookkeeper.

In January, 1928, the business was not making money. Mrs. Page sought for a purchaser and consulted Lewis W.

Kenney. Kenney interested Parker in the transaction and together they called on Mrs. Page. She stated she would sell for $75,000 free and clear, she to receive cash and accounts receivable, to pay all debts, adjustment to be made when the trade was consummated based on the inventory statement of March 1, 1928. The remaining plaintiffs joined with Parker and Kenney in carrying out the transaction. Later, in March, the other executors assented to the sale. On March 22, 1928, Mrs. Page accepted Kenney's check for $500 and signed a paper of the same date which stated: "In part consideration of the agreement price between parties represented by L. W. Kenney for the sale of the F. M. Page Company, I accept check of $500. to apply on account. E. Maud Page, E/W."

On March 24, 1928, Mrs. Page was absent from Lynn. On March 25 Parker went to the Page factory and assumed the direction of the business, gave orders to Moore and Earp, "and generally acted as an owner would act"; and he did this "with the thought that he had a right to do it, and that he had purchased the business," although he was without direct authority from the defendants. Before Mrs. Page left Lynn she told Moore and Earp she had sold the business. On March 28 she telephoned to the factory and learned from Moore what Parker was doing. "She expressed some surprise, but in no way did she intimate that Parker had no right there, nor did she tell Moore to curtail in any way his activities." On April 2 she went to the factory. Parker then went on the payroll at $60 a week; he was given a key of the premises by Moore and he continued to act in the conduct of the business as he had acted during the absence of Mrs. Page. He ordered new machinery. He solicited business for the Page concern. He made business trips for this purpose. These things the master found were all done with the tacit acquiescence of Mrs. Page. Shortly after March 22 Parker and his associates entered into an agreement of association for the purpose of securing a charter. Their attorney drew an agreement of sale which was submitted to Mrs. Page and to one of the executors. Mrs. Page objected to the clause in the agreement with

reference to the payment of the obligations outstanding, and to the clause "that in her opinion intimated that the Executors had been doing business without proper authority." On April 9 there was a conference at the factory between Mrs. Page, Parker and Silsbee, one of the plaintiffs. Mrs. Page was disappointed at the statement made by the bookkeeper of the "adjustments up to approximately April 1." She asked Parker and Silsbee to assume the mortgage or at least a part of it; they refused, and she declined to sign the agreement of sale. Parker remained at the factory and continued to act in the same manner as he had acted since March 25, without objection by the defendants, until April 20, when he was notified by the attorney representing the Naumkeag Trust Company and Mrs. Page that they "did not care to have you [Parker] in attendance at the factory." Parker had been paid his wages from April 2 to April 21 at $60 a week. Prior to the filing of the bill in equity a tender of the $500 had been made by the defendants.

On March 22, 1928, Parker was president of and a stockholder in the Lynn Specialty Company; the affairs of that company were not conducted in a manner agreeable to him, but he would not have left his position with it unless he had been satisfied that the trade with the Page company was going through. Parker's associates in The Lynn Specialty Co. on March 27 denied him admission to their place of business and notified him he was no longer employed by the company. Parker was sixty-nine years of age; there were no other concerns in this Commonwealth similar to the Page Company and The Lynn Specialty Co.; and the master states that it is his belief that Parker will never get employment in either company, nor could he adapt himself to any other kind of business.

The answer set up the statute of frauds. Parker died testate in July, 1929. His executors have appeared.

In the Superior Court there was an order for a decree for the plaintiffs. This decree ordered the defendants to transfer and convey to the plaintiff Parker the real and personal property of the Page company, and that the case be referred

to the master to determine the amount of the damages sustained by Parker.

The agreement of the parties contemplated the sale of all the property belonging to Fred M. Page and used by him in the business. The tract of land which was unregistered was not included in the written agreement prepared by the plaintiffs and submitted to the defendants, but this tract, as well as the one which was registered, was included in the oral agreement. The proposition to buy and sell included all the property of the business. The assets were bought as a unit and this appears to have been the understanding of the parties. In whatever she did, Mrs. Page acted with the sanction of the other executors.

The exceptions of the plaintiffs to the master's report based upon the contentions that facts requested were not found, and that there should be amplification of the findings and such like grounds, must be overruled. *Kilkus* v. *Shakman*, 254 Mass. 274, 276, 278. *Bartlett* v. *Roosevelt, Inc.* 258 Mass. 494, 496, and cases cited. The motion to recommit the master's report was addressed to the sound judicial discretion of the judge. This discretion appears to have been properly exercised in denying the motion. *Warfield* v. *Adams*, 215 Mass. 506, 523. *Mason* v. *Albert*, 243 Mass. 433, 437.

The governing principles of law respecting the facts disclosed on this record are established. The statute of frauds, G. L. c. 259, § 1, provides that " No action shall be brought . . . . Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them . . . . Unless the . . . contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." Plainly the memorandum acknowledging the receipt of $500 was not enough to satisfy the statute of frauds as to the real estate. *Sanjean* v. *Miller*, 248 Mass. 288. *Atwood* v. *Cobb*, 16 Pick. 227, 231. *Bogigian* v. *Booklovers Library*, 193 Mass. 444. *Harrigan* v. *Dodge*, 200 Mass. 357. The plaintiffs can prevail, if at all, only on the ground of partial

performance of an oral contract unenforceable under the statute of frauds. There is not here shown sufficient part performance of the contract in reliance upon the oral agreement to create an estoppel to the other party against setting up the statute of frauds. Where one, in reliance upon the oral agreement, has partly performed it by taking possession of the real estate and by making improvements thereon so that he cannot be restored to his original situation, then specific performance may be decreed. The rule was stated in *Williams* v. *Carty,* 205 Mass. 396, 400, in these terms: "where an oral agreement respecting land, originally unenforceable by reason of the statute of frauds, has been partly performed by the party seeking to enforce it by paying the purchase price, by taking possession and by suffering substantial loss either through changed situation or the making of improvements upon the estate, and where he cannot be restored to his original situation, specific performance may be granted. *Potter* v. *Jacobs,* 111 Mass. 32, 37." *Davis* v. *Downer,* 210 Mass. 573. *Peoples Express, Inc.* v. *Quinn,* 235 Mass. 156, 159. *Mason* v. *Albert,* 243 Mass. 433. *Curran* v. *Magee,* 244 Mass. 1. In the case at bar the plaintiffs did not pay the purchase price but only a comparatively small partial payment, and they made no improvements upon the real estate. They simply entered into possession of the real estate and remained there less than a month, and one of them, in order to enter into the business conducted on the real estate, gave up a position which was not agreeable to him and is now no longer open to him, but which he would have retained but for the oral agreement. This does not constitute, in view of all the circumstances, sufficient part performance to estop the defendants from relying upon the statute of frauds, or to warrant a decree for specific performance. The case falls within the class illustrated by numerous decisions. *Glass* v. *Hulbert,* 102 Mass. 24. *Burns* v. *Daggett,* 141 Mass. 368, 372, 373. *Sarkisian* v. *Teele,* 201 Mass. 596, 607, 608. *Morse* v. *Winslow,* 254 Mass. 407. *Tabor* v. *Shields,* 258 Mass. 511. *Des Brisay* v. *Foss,* 264 Mass. 102. *Palumbo* v. *James,* 266 Mass. 1. *Hazleton* v. *Lewis,* 267 Mass. 533.

The interlocutory decree, so entitled, and entered on June 28, 1929, is affirmed. The interlocutory decree, entitled "Decree," entered also on June 28, 1929, and set forth at length in the "Report" signed by the judge, is reversed.

*Ordered accordingly.*