Westinghouse Electric Corporation *vs.* J. J. Grace & Son, Inc. & others.

Suffolk. November 1, 1965. — December 6, 1965.

Present: Spalding, Cutter, Kirk, Spiegel, & Reardon, JJ.

*Public Works. Sale,* Contract of sale. *Equity Pleading and Practice,* Master: recommittal.

Subsidiary findings reported by a master supported his finding that certain items of electrical equipment sold to a subcontractor on a public construction project were incorporated in it in August and within the ninety day period provided by G. L. c. 149, § 29, for the filing of a sworn statement of claim against the statutory security, notwithstanding the master's subsidiary finding that a list drawn in the preceding July to indicate incomplete work on the project did not mention those items. [667]

One who sold materials to the electrical subcontractor on a public construction project pursuant to a continuing series of orders for that project and filed his sworn statement of claim for sundry items within ninety days after furnishing the last of such items but more than ninety days after furnishing most of the items was entitled to the benefit of the statutory security furnished under G. L. c. 149, § 29, as to all the items, even though each order was acknowledged on a form stating that "each shipment or delivery shall be considered a separate and independent transaction." [667–668]

A control sheet agreed to by a seller of materials to a subcontractor on a public construction project and by the subcontractor and allocating to specific invoices the payments made by the subcontractor sufficiently identified his debt to the seller on that project notwithstanding a commingling on the seller's general account books of all debts owed to him by the subcontractor on a number of jobs. [668]

There was no abuse of discretion in the denial of a motion to recommit the report of a master "with instructions to report proper summaries [of evidence] and strike certain conclusions" where no objection raised a question of law depending on evidence not reported. [668]

In a suit under G. L. c. 149, § 29, by an unpaid seller of materials to the electrical subcontractor on a public construction project against the general contractor and the surety on his statutory security bond, a contention by the defendants that the plaintiff was not entitled to the benefit of that security with respect to two items of equipment because they were materials "specially fabricated . . . so as to be unsuitable for use elsewhere" and the plaintiff had not given the special notice to the general contractor required by § 29 for valid claims for such materials was without merit where a master found that items similar to the two items were in common use and that the cost of the two items could be completely recovered with little or no adaptation; and the two items were properly covered by a sworn statement of claim seasonably filed by the seller for the two items and other materials furnished to the subcontractor. [668]

BILL IN EQUITY filed in the Superior Court on August 9, 1961.

The suit was heard by *Cahill, J.,* on a master's report.

*John W. Burke* (*Francis E. Dooley, Jr.,* with him) for the defendants John Bowen Co., Incorporated & another.

*Thomas E. Goode* (*Bennett Sanderson* with him) for the plaintiff.

SPIEGEL, J.   This is a bill in equity to enforce a claim for materials furnished by the plaintiff Westinghouse Electric Corporation, d/b/a Westinghouse Electric Supply Company (Westinghouse), to the defendant J. J. Grace & Son, Inc. (Grace), a subcontractor, for use in the construction of the Donnelly Field School in Cambridge.   The bill

seeks to reach the security furnished by the bond required by G. L. c. 149, § 29, given by the general contractor John Bowen Co., Incorporated (Bowen) as principal and Indemnity Insurance Company of North America (Indemnity) as surety, which was conditioned on the payment of those who furnished materials for the school. The case was referred to a master. The defendants Bowen and Indemnity (hereinafter called the defendants) appealed from interlocutory decrees entered by a judge of the Superior Court denying a motion by the defendants to recommit to the master, overruling the objections (treated as exceptions) of the defendants to the master's report, and confirming the report, and from a final decree in favor of the plaintiff.

Westinghouse supplied Grace in the conduct of a number of jobs both before and during the course of the construction of the school and aided Grace in the preparation of its bid on the school. So far as the evidence appears Grace bought from no other source than Westinghouse to complete its contract relative to conduits, wire, cable, switches and receptacles, dimmer board, fixtures, fire alarm system and clock and program system. During the job when materials were needed they were ordered informally by telephone (after a substantial initial order) and were either delivered by Westinghouse or picked up by Grace. Orders were acknowledged by a form which stated on its back: "[E]ach shipment or delivery shall be considered a separate and independent transaction." Nevertheless, the master found that there was an implied contract, under the terms of which Grace would buy and Westinghouse would sell substantially all of the material requirements of the electrical subcontract for the Donnelly Field School.

Materials ordered by Grace for the school were identified particularly for the school. Westinghouse's general account books commingled all debts owed by Grace; but the master found that a control sheet allocated to specific invoices the payments made by Grace and that at conferences with Westinghouse Grace agreed to the allocations made.

Grace originally ordered five Kurt Versen fixtures

#DF–9171 and six Prescolite exit signs although six such fixtures and eight exit signs were required by the contract plans. Near completion of the job, Grace telephoned orders for one Kurt Versen fixture and two Prescolite exit signs and also a plastic diffuser. While the school was being constructed and immediately prior thereto, Grace had no other job which required either a plastic diffuser or a Kurt Versen fixture #DF–9171. Grace stamped "received" on invoices for the exit signs on August 9, for the diffuser on August 23, and for the fixture on August 26, 1960. Grace's stock sheet showed that the items in question were charged to the Donnelly Field School, and Grace had workmen on the job there after the dates marked on the invoices. On November 7, 1960, Westinghouse filed a sworn statement of claim for materials used in the construction of the school. The master found that the statement was timely because filed within ninety days after Westinghouse had furnished the fixture, diffuser, and signs for the school.

The defendants contend that the master's finding that the items in question were incorporated into the school after the beginning of August is not supported by the evidence and is inconsistent with a subsidiary finding that a punch list drawn in July to indicate incomplete work did not mention the items in question. The master, however, was not compelled to find that the punch list was accurate. See *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass 102, 106. From our review of the record we are of opinion that reasonable inferences drawn from the subsidiary facts support the findings of the master. See *Garfield* v. *Garfield,* 327 Mass. 529, 533. See also *American Window Cleaning Co. of Springfield, Mass.* v. *Cohen,* 343 Mass. 195, 200.

The defendants also contend that each purchase order filled is a separate contract and that the statute protects only those items furnished under the same contract as the items furnished within the ninety day period.

The statute refers only to materials "for which claim is made." Our earlier decisions, that a statement of claim

seasonably filed after furnishing material under one contract does not extend to an earlier contract, distinguished such separate contracts from arrangements constituting "continuous employment." *Mario Pandolf Co. Inc.* v. *Commonwealth,* 303 Mass. 251, 257. *Massachusetts Gas & Elec. Light Supply Co.* v. *Rugo Constr. Co. Inc.* 321 Mass. 20, 23. Even assuming that the parties did not have a single contract covering all their transactions, the record shows a continuing series of orders for a particular construction project. We do not believe that the Legislature intended that claimants who furnish materials be required to file a separate statement of claim for each item ordered under such an arrangement.

The defendants contend that Grace's debt for materials used in the Donnelly Field School was not separate from its other debts to Westinghouse. However, the intention of the parties expressed by the allocation agreed to in compiling the control sheet governs the unallocated accounts kept by the parties.

The defendants moved to recommit "with instructions to report proper summaries and strike certain conclusions." Denial of this motion was within the discretion of the judge since no question of law was raised that depended on evidence not reported. *Macera* v. *Mancini,* 327 Mass. 616, 620. *S. D. Shaw & Sons, Inc.* v. *Joseph Rugo, Inc.* 343 Mass. 635, 640.

Finally, the defendants contend that two items of equipment were "specially fabricated . . . so as to be unsuitable for use elsewhere" and required special notice under the statute. The master found, however, that similar items were in common use, and that with little or no adaptation the cost could be completely recovered. Therefore, the items were not unsuitable for use elsewhere, and were properly covered by the statement of claim filed by Westinghouse.

The interlocutory and final decrees are affirmed. The plaintiff is to have costs of appeal.

*So ordered.*