Tzitzon Realty Co., Inc. *vs.* Henry H. Mustonen & another.

Essex.   April 4, 1967. — June 7, 1967.

Present: Wilkins, C.J., Spalding, Whittemore, Cutter, & Reardon, JJ.

*Frauds, Statute of.   Contract,* For sale of real estate.   *Evidence,* Extrinsic affecting writing.   *Agency,* What constitutes.   *Husband and Wife,* Agency.   *Equity Pleading and Practice,* Master: summary of evidence, findings, recommittal.

A party excepting to a master's report was not entitled to use Rule 90 of the Superior Court (1954) to obtain a summary of all the evidence on the ground that as a matter of law all the evidence would have required different conclusions than the conclusions reached by the master.   [650]

The disposition of a motion to recommit to a master for alleged failure to set out adequately the subsidiary facts upon which his conclusions were based is a discretionary matter for the trial court. [651]

Under the statute of frauds, G. L. c. 259, § 1, Fourth, and § 2, a memorandum of an oral contract for sale of a house and land was not insufficient by reason of lack of a statement in the memorandum that the sellers were to have the right to "remain in the house for one year after the sale by paying" certain amounts, where it appeared that occupancy of the house was not part of the sellers' undertaking. [651–652]

A memorandum describing as "a house and land on the corner of" two streets in a town the premises which the signer of the memorandum had orally agreed to sell, in the circumstances signified all the land which the signer and his wife owned in two adjoining towns, and contained a sufficiently definite description of the land to satisfy the statute of frauds, G. L. c. 259, § 1, Fourth, even though the land consisted of a number of parcels separately described of record, where it appeared that the signer, during the negotiations leading up to the sale, had compiled an abstract with deed references describing all the land which he and his wife owned in the two towns and had given it to the prospective purchaser, who had used it in his title search, and that "both parties intended that any negotiations . . . pertained to all of the land . . . described in" the abstract. [652, 653]

Attendant circumstances outside a written memorandum of an oral contract for sale of real estate may be shown by parol for the purpose of interpreting and applying the memorandum. [652–653]

A recital in a memorandum of an oral contract, that the signer had received a "down . . . deposit on a house and land," in the attendant circumstances shown clearly indicated that the parties to the contract intended a sale of the premises, and did not fail to satisfy the statute of frauds, G. L. c. 259, § 1, Fourth, by reason of the omission of an express reference to a sale. [653]

A certain memorandum of an oral contract for sale of real estate owned by a husband and wife, not signed by the wife but signed by her husband in her presence and with her consent and as representative of both, was sufficient to charge the wife as well as the husband upon the contract in a suit in equity for specific performance. [654]

Absence of a specification of the time for performance in a memorandum of an oral contract for sale of real estate imported performance within a reasonable time and did not render the memorandum insufficient under the statute of frauds, G. L. c. 259, § 1, Fourth. [654]

Bill in equity filed in the Superior Court on March 23, 1964.

Following hearing by a master, interlocutory decrees denying a motion by the defendants to recommit to the master and confirming his report, and the final decree, were entered by *Macaulay*, J. The defendants appealed from the interlocutory and final decrees.

*Henry H. Gove* (*Charles G. Kadison, Jr., & Ashode N. Amirian* with him) for the defendants.

*Jason S. Cohen* for the plaintiff.

WHITTEMORE, J. The defendants appeal from a final decree of the Superior Court ordering the conveyance of land in Groveland and Georgetown upon the payment of $42,500. The decree also ordered that the defendants, for stated payments, should have the right to occupy the house on the land conveyed for a period of one year from the date of conveyance. The facts are found in a master's report.

1. There was no error in the denial of the motion to recommit the report. The objections specified findings that the defendants averred should be made and stated that "the . . . report . . . reaches a conclusion which raises a question of law which depends on evidence not reported." The statement of objections included a request that the master append a summary of the evidence on which he concluded that an agreement had been reached, especially certain specified testimony not in agreement with his findings. One objection was to the finding that the plaintiff had not been guilty of laches, and requested a summary of the relevant evidence, especially certain evidence specified. The motion to recommit asserted that the master had failed to append required summaries of evidence or to set out all the subsidiary facts upon which his findings were based.

The objections, apart from the issue of laches, assert, in effect, that all the evidence would have required a different conclusion as a matter of law. This appears to be an effort to turn an issue of fact into one of law and thus require that all the evidence in the case be summarized. Rule 90 of the Superior Court (1954) may not be used for this purpose. *Minot* v. *Minot,* 319 Mass. 253, 258–259. Even if additional or contradictory evidence, as suggested, had been reported, we see no basis for concluding that it would have, of necessity, controlled the master's findings.

Laches, in most cases at least, is an issue of fact. *Hanrihan* v. *Hanrihan,* 342 Mass. 559, 567, and cases cited. Nothing appears in the objections to suggest that a finding of laches was required as matter of law.

Whether there were adequate findings of subsidiary facts
was a matter for the judge in the Superior Court. *Macera*
v. *Mancini,* 327 Mass. 616, 620, and cases cited. *Westing-
house Elec. Corp.* v. *J. J. Grace & Son, Inc.* 349 Mass. 664,
668. The motion gave the judge an opportunity to deter-
mine whether the master had reported the facts as to dis-
closed or suggested issues of law. We discern no abuse of
discretion in the denial of the motion. Although a finding
of more subsidiary facts would have been appropriate we
cannot say that this was required as matter of law.

2. The memorandum relied on to charge the defendants,
husband and wife, is as follows: "October 18, 1962[1] —
Groveland, Mass. Received $500 as down (the word pay-
ment was written and stricken out) of land (written and
stricken out) deposit on a house and land on the corner of
School Street and Salem Street South Groveland, Mass.
from Tzitzon Realty Co., Inc. in Haverhill, Mass. Signed
Henry H. Mustonen." The issue is whether, in the sev-
eral aspects next discussed, this was a sufficient compliance
with G. L. c. 259, § 1: "No action shall be brought: . . .
Fourth, Upon a contract for the sale of lands, tenements or
hereditaments or of any interest in or concerning them; . . .
Unless the promise, contract or agreement upon which such
action is brought, or some memorandum or note thereof, is
in writing and signed by the party to be charged therewith
or by some person thereunto by him lawfully authorized."

a. *The failure to state the consideration.*

General Laws c. 259, § 2, provides: "The consideration
of such promise, contract or agreement need not be set
forth or expressed in the writing signed by the party to be
charged therewith, but may be proved by any legal evi-
dence." "This . . . means that the memorandum need
not set forth both sides of the bargain." *Fichera* v. *Law-
rence,* 312 Mass. 287, 289. The undertaking sought to be
enforced must be stated but the consideration for that
promise need not be. *White* v. *Dahlquist Mfg. Co.* 179
Mass. 427, 431.

---

[1] The master found that "October 18" was a mistake; the memorandum
was made on September 18, 1962.

The defendants assert that the memorandum should have mentioned not only their obligation to sell the land, but also that they were to occupy the house for one year. We disagree. There was no undertaking by the defendants to occupy the house. Hence the absence of reference thereto was no more significant than the failure to state the money to be paid by the plaintiff. The defendants had been reluctant to include in the sale their residence and two acres of land immediately about it. The master found that they had been persuaded to sell all the land and the house by the plaintiff's undertaking that they "could remain in the house for one year after the sale by paying the taxes and the interest on $10,000 which . . . [the treasurer] considered to be the value of the house." Compare *Bouvier* v. *L'Eveque*, 324 Mass. 476, 477–478, where there were mutual promises with respect to the tenancy.

b. *The description of the land.*

The master found that in the course of the negotiations, which extended over a number of months, the male defendant, based on his search at the registry, had compiled a seven page abstract with deed references which described all the land that he and his wife owned in Groveland and Georgetown. He gave this to the plaintiff's treasurer. "[D]uring the discussions . . . both parties intended that any negotiations . . . pertained to all of the land . . . described in these seven (7) pages." The treasurer told the male defendant that he would refer the seven pages to his attorney for preparation for a title search and he did so.

In the circumstances, the words in the memorandum, "a house and land on the corner of School Street and Salem Street South Groveland," reasonably stood, as between the parties, as a shorthand description of the land more fully described in the abstract. This court said in *Desmarais* v. *Taft*, 210 Mass. 560, 561, "The statute . . . requires a memorandum 'to contain a description of the land sufficient for purposes of identification, when read in the light of all the circumstances of ownership of the property by the vendor. . . . Attendant *circumstances may be shown* out-

side the writing and by parol for the purpose of interpreting and applying the memorandum.' *Harrigan* v. *Dodge,* 200 Mass. 357, 359, and cases cited.'' Accord, *Mead* v. *Parker,* 115 Mass. 413, 414. See *Cousbelis* v. *Alexander,* 315 Mass. 729, 731. Compare *Michelson* v. *Sherman,* 310 Mass. 774, 777. This is not, precisely, a case of incorporating another writing, although parol evidence may also be admitted if intended to show that two or more papers were so connected in the minds of the parties that they adopted all of them as indicating their purpose. *Clark* v. *Olejnik,* 240 Mass. 215, 217. Accord, *Nickerson* v. *Weld,* 204 Mass. 346, 356.

We do not overlook the findings that some of the land was in Georgetown and that the land consisted of a number of parcels, separately described. The final decree describes three parcels and, in the third parcel, seven lots. These findings do not make unreasonable the conclusion that the words used meant to the parties all the land described in the abstract. The parcel containing the seven lots was expressly found to be adjacent to the defendants' other land. The controversy arose when, on the day following the making of the agreement, the defendants received another offer for the same total holdings ''less a piece . . . an acre in size and less the [defendants'] house.'' The defendants through an attorney returned the check on the ground that ''Mrs. Mustonen declines to join in the proposed sale.''

c. *The omission to refer expressly to a sale.*

We think the memorandum did not fail because of ambiguity as to whether a sale, lease or option was intended. We see no reason why ''attendant circumstances'' may not be shown by parol for ''the purpose of interpreting . . . the memorandum'' (*Desmarais* case, *supra*) in respect of the words ''down . . . deposit on a house and land.'' The attendant circumstances as found by the master left no doubt that a sale was intended.[2]

---

[2] There was additional corroborative evidence that was excluded by the master and reported as to the issue of law involved. This evidence should have been admitted for the limited purpose of showing the circumstances. A prior

Cases on demurrer, in which the allegations were found inadequate, are distinguishable. See *Harrigan* v. *Dodge,* 200 Mass. 357, 359; *Sanjean* v. *Miller,* 248 Mass. 288. The issue was not considered in *Parker* v. *Page,* 270 Mass. 167, 171, where the memorandum ("In part consideration of the agreement price between parties represented by L. W. Kenney for the sale of the F. M. Page Company, I accept check of $500.- to apply on account . . .") was ruled insufficient.

d. *Absence of wife's signature and statement of time for performance.*

The defendants do not argue these points except to contend, in respect of the recommittal of the report, that, had additional evidence been stated, it would have led to the conclusion that the wife never agreed to the sale and did not authorize her husband to act for her. See point 1, above.

As to the sufficiency of the memorandum without the wife's signature, the master found that the receipt was signed by the male defendant in his wife's presence and that this was with her consent and acquiescence and that it was the intention and design of both that the signature represent the signature of both. The cases indicate that the husband could act as the wife's agent in such a matter, thus making the memorandum hers for purposes of the statute. *Gordon* v. *O'Brien,* 320 Mass. 739, 741–742. See *Cobuzzi* v. *Parks,* 315 Mass. 199, 202.

As to the time of performance, the memorandum in effect calls for conveyance within a reasonable time. *Atwood* v. *Cobb,* 16 Pick. 227, 231. *Shayeb* v. *Holland,* 321 Mass. 429, 431.

3. The interlocutory and final decrees are affirmed with costs of appeal.

*So ordered.*

---

memorandum written by the male defendant read: "We received $42,500 for our house and our land bounded on School and Salem Streets in Groveland, Massachusetts." The writing was destroyed after the plaintiff's agent pointed out that only $500 was presently being paid. This bore on the meaning of the descriptive terms as well as on the intention to sell.