PAUL A. PETERS & others[1] *vs.* STANLEY WALLACH & another.[2]

Middlesex.    November 5, 1974. — January 10, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Equity Pleading and Practice,* Master: findings, recommittal, report of evidence; Appeal; Report of evidence.    *Equity Jurisdiction,* Specific performance.    *Evidence,* Privileged communication.    *Interest.*

Findings made by a master on oral testimony and confirmed by a judge will not be reversed by this court absent a showing that the findings were plainly wrong.  [626]
Even though the respondents alleged that they were unable to secure an accurate transcription of a tape recording from the stenographer, the lower court's denial of the respondents' motion to file the recording directly in this court showed no abuse of discretion.  [627]

---

[1] Paul S. Peters, father of Paul A. Peters, Paul Peters Brokerage, Inc., and Churny Company, Inc.

[2] Shirley Wallach, his wife.

Inasmuch as a client's grant of authority to his attorney to settle a law suit must be communicated to the other party to the settlement, it is not a privileged communication. [627-628]

An executory agreement to settle a preëxisting claim may be specifically enforced. [628]

Specific performance of a settlement contract will not be refused merely because the price is inadequate or excessive absent a showing of fraud or mistake. [628]

Contentions that a settlement contract should not be specifically enforced because of the doctrine of unclean hands or the effect of Sunday laws will not be heard on appeal where those issues were not raised in the lower court. [628-629]

There was no error in a decree ordering specific performance of a settlement contract without providing for interest from the date of the contract or of the suit where the delay in payment was caused by repudiation of the contract by the party to be paid. [629]

BILL IN EQUITY filed in the Superior Court on April 5, 1968.

The suit was heard by *J.P. Sullivan,* J., on a master's report.

*Robert S. Wolfe* for the defendants.

*Sumner Z. Kaplan (Jerry E. Benezra & Lawrence C. Zalcman* with him) for the plaintiffs.

BRAUCHER, J. This is a suit in equity to enforce an agreement for the settlement of an earlier suit. Successive references and recommittals to masters resulted in a procedural nightmare and eventually in a final decree enforcing the settlement agreement. We hold, on the basis of the findings of the masters, that the settlement agreement was valid and enforceable in equity, and affirm the final decree.

Beginning in 1961 the defendant Stanley Wallach (Wallach) was associated with the plaintiffs in a cheese importing business. He and his wife owned about one-third of the stock of the two plaintiff corporations, the two plaintiffs Peters owned the rest, and he worked for the corporations under an employment agreement. A dispute arose when Wallach was discharged in 1967, and he brought suit against the plaintiffs on August 9, 1967. The suit was referred to a master, hearings began in September, 1967,

and discussions were held between counsel with a view to settlement.

In April, 1968, the plaintiffs brought the present suit, claiming that an offer to compromise made by them to the defendants had been accepted on or about March 4, 1968, and that the acceptance had been confirmed by Wallach's counsel in a letter dated March 5, 1968. The second suit was referred to the same master, and he filed his report on February 20, 1969. By consent the report was recommitted to the master for the purpose of attaching objections under Rule 90 of the Superior Court (1954), objections were filed by the defendants, and the master filed a summary of evidence relating to the objections. After hearing an interlocutory decree was entered confirming the master's report, and on November 5, 1969, a final decree was entered enforcing the settlement agreement. The defendants appealed from both decrees.

On June 16, 1970, this court by consent remanded the case to the Superior Court for a new trial based on newly discovered evidence. After further proceedings in the Superior Court not fully disclosed in the record, this court on June 30, 1971, vacated its order of June 16, 1970, and entered new orders vacating the interlocutory and final decrees and remanding the case for filing of a motion to recommit to a master. Early in 1973 the case was recommitted to a different master to hear evidence and report on three issues: (1) whether Wallach's counsel was authorized to accept the settlement offer, (2) whether Wallach accepted the offer, and (3) whether there was such a disproportion between the settlement and the value of the claim as to warrant denial of enforcement. The second master filed his report on June 6, 1973, and the defendants appeal from denial of a motion to recommit, from an interlocutory decree confirming the report, and from a final decree enforcing the settlement agreement, entered August 6, 1973.

In September and October, 1973, orders were entered "nunc pro tunc Aug 13 1968" designating stenographers to report the testimony to this court, and the transcript of

testimony is before us. At the time of oral argument the defendants filed a motion for leave to perfect the record by filing a tape recording admitted at the hearing before the second master.

We summarize the findings of the second master on the issues referred to him. Wallach's counsel in the prior suit had an extensive legal practice and experience in evaluating various types of businesses. After numerous discussions and offers on both sides, the plaintiffs, through Wallach's counsel, offered the Wallachs $45,000 unconditionally for their stock and in settlement of all claims by them. Counsel communicated the offer to the Wallachs. A tape recording of a telephone conversation between counsel and Mrs. Wallach was inconclusive as to her determination to accept the offer.

The offer was accepted by the Wallachs. Wallach's counsel on March 4, 1968, informed counsel for the plaintiffs of the acceptance and confirmed the acceptance by a letter addressed to and received by counsel for the plaintiffs. Half the $45,000 was to be paid approximately thirty days later, Wallach's counsel was to hold the stock in escrow as a pledge for the payment of the balance, and the balance was to be paid in October, 1968, or January, 1969, at the Wallachs' option. Wallach's counsel drew up a promissory note, guaranty and releases, the instruments were approved as to form by counsel for the plaintiffs, and April 4, 1968, was agreed on as the date for the first payment. The plaintiffs were ready to perform, but Wallach's counsel informed the plaintiffs that the Wallachs had decided not to go through with the settlement agreement. Thereafter, at a lobby conference in the Superior Court, the Wallachs disclosed to the judge that they had accepted the settlement but had later changed their minds.

The corporate plaintiffs were closely held corporations not listed on the stock exchange. Their combined assets amounted to nearly $160,000 at the date of the settlement, and the Wallachs' interest would have been about $53,000. Wallach's employment agreement was terminable, and his discharge was necessitated because his conduct had tended

to reduce his reputation as a salesman and as a result he had lost his effectiveness.

The master concluded that Wallach's counsel had authority to accept the settlement offer, that Wallach accepted it, and that there was not such a great disproportion between the settlement and the value of the claim as to warrant denial of specific performance.

1. *Procedural issues.* This case demonstrates again the confusion and delay which can arise from reference to a master. See *O'Brien* v. *Dwight,* 363 Mass. 256, 279-280 (1973). The Wallachs apparently ask us to review the transcript of more than 900 pages, to listen to the tape recording, and to decide that the master took an erroneous view of numerous questions of fact. This we decline to do.

"The main object of referring a suit to a master is to have the facts settled by him and to put the case in a position where nothing remains to be done except for the judge to apply correct principles of law to the facts found. Little is to be gained if after adverse findings a party can require a judge of the trial court and this court upon appeal to review all the evidence introduced before the master for the purpose of determining whether there is error in some finding of fact. A reference requiring a report of all the evidence is seldom issued." *Shelburne Shirt Co. Inc.* v. *Singer,* 322 Mass. 262, 265 (1948). See *Kelley* v. *Arnold,* 326 Mass. 611, 614 (1950).

When the evidence is reported, it may be used to show that a finding of the master is plainly wrong. *Kuklinska* v. *Planning Bd. of Wakefield,* 357 Mass. 123, 127 (1970), and cases cited. In the absence of such a showing, findings made by a master on oral testimony and confirmed by the judge are not to be reversed. From the master's subsidiary findings, we draw our own conclusions. *Kannavos* v. *Annino,* 356 Mass. 42, 46 (1969).

The Wallachs moved to recommit to the second master for the purpose of appending their requests for findings of fact to the master's final report. The motion was properly denied. Rule 90 of the Superior Court (1954). *Manfredi* v. *O'Brien,* 282 Mass. 458, 460 (1933). *United Auto Supply*

*Co. Inc.* v. *Amaro,* 346 Mass. 625, 627-628 (1964). *West-inghouse Elec. Corp.* v. *J. J. Grace & Son, Inc.* 349 Mass. 664, 668 (1965). *Tzitzon Realty Co. Inc.* v. *Mustonen,* 352 Mass. 648, 651 (1967). *Cross Co.* v. *Clermont's, Inc.* 361 Mass. 874 (1972).

The newly discovered evidence consisted of a tape recording, made by the Wallachs' son, of a telephone conversation between the Wallachs and Wallach's counsel on March 3, 1968. The second master admitted the recording as an exhibit, but found it inconclusive. The recording is not included in the record before us, and the Wallachs have moved for leave to file it to perfect the record. There is no certificate of the judge dispensing with reproduction. S.J.C. Rule 1:06 (1), 351 Mass. 735 (1967). Cf. *Shapiro* v. *State Farm Mut. Ins. Co.* 355 Mass. 54, 55 (1968). The Wallachs allege that they were unable to secure an accurate transcription from the stenographer, and that a motion for leave to file the recording directly in this court was made and denied in the Superior Court in October, 1974. No abuse of discretion is shown, and the present motion is denied.

2. *Testimony of counsel.* The Wallachs contend that the only evidence that their counsel had authority to settle consisted of his testimony as to communications with them, and that those communications were privileged. See *Vigoda* v. *Barton,* 348 Mass. 478, 485 (1965). We disagree. Communications between an attorney and his client are not privileged, though made privately, if it is understood that the information communicated is to be conveyed to others. *United States* v. *Tellier,* 255 F. 2d 441, 447 (2d Cir. 1958). See McCormack, Evidence, § 91 (2d ed. 1972); Wigmore, Evidence, § 2311 (McNaughton rev. 1961). Cf. *Temple* v. *Phelps,* 193 Mass. 297, 304 (1906), and cases cited. The client's grant of authority to settle must be communicated to the other party to the settlement and is thus not confidential. *Willard C. Beach Air Brush Co.* v. *General Motors Corp.* 118 F. Supp. 242, 244 (D. N. J. 1953), affd. 214 F. 2d 664 (3rd Cir. 1954). *Aritex Land Co. Inc.* v. *Baker,* 14 Ariz. App. 266, 277 (1971). *Hiltpold* v. *Stern,* 82

Atl. 2d 123, 127 (Mun. App. D. C. 1951). *Koht* v. *Dean,* 220 Iowa 86, 93-94 (1935). *Linthicum* v. *Pruden,* 313 Ky. 527, 529 (1950). *Baum* v. *Denn,* 187 Ore. 401, 406-407 (1949). *Koeber* v. *Somers,* 108 Wis. 497, 503-504 (1901). Cf. *Hatton* v. *Robinson,* 14 Pick. 416, 422 (1834); *Day* v. *Moore,* 13 Gray 522, 524 (1859).

3. *Specific enforcement.*    The Wallachs contend that an executory agreement to settle a preëxisting claim is not enforceable, citing *New York, N. H. & H. R.R.* v. *Martin,* 158 Mass. 313, 316 (1893), *Dalton* v. *West End St. Ry.* 159 Mass. 221, 223 (1893), *Prest* v. *Cole,* 183 Mass. 283, 285 (1903), and *Riley* v. *Boston Elev. Ry.* 195 Mass. 318, 322 (1907). There is no such rule. Although an unexecuted accord does not operate as an accord and satisfaction, discharging the original claim, it is nonetheless enforceable as a contract. *Hunt* v. *Brown,* 146 Mass. 253, 254 (1888). *Sherman* v. *Sidman,* 300 Mass. 102, 105-107 (1938). Such an agreement may be specifically enforced, and may be set up as an equitable defense in an action on the original claim. G. L. c. 231, § 31, as appearing in St. 1973, c. 1114, § 164. Mass. R. Civ. P. 8 (c), 365 Mass. 750. *Cook* v. *Richardson,* 178 Mass. 125, 128 (1901). *Gadsby* v. *Gadsby,* 275 Mass. 159, 167 (1931). *Corrigan* v. *Payne,* 312 Mass. 589, 592 (1942). See Restatement: Contracts, § 417 (d) (1932); Williston, Contracts, §§ 1840-1845 (3d ed. 1972). Equity will also enforce specific performance of an agreement to sell closely held stock not purchasable in the market. *Nigro* v. *Conti,* 319 Mass. 480, 484 (1946). Cf. *Herbits* v. *High-Speed Process Printing Corp.* 358 Mass. 817 (1971). No question is raised under the statute of frauds. G. L. c. 106, § 8-319. See *Colt* v. *Fradkin,* 361 Mass. 447, 451-454 (1972).

Specific performance will not be refused merely because the price is inadequate or excessive. *New England Trust Co.* v. *Abbott,* 162 Mass. 148, 155 (1894). There is here no showing of fraud, mistake, or concealment in the nature of fraud, such as to render it plainly inequitable and against conscience that the contract should be enforced. The contentions of the Wallachs with respect to the doctrine of

unclean hands and the effect of the Sunday laws are not open on this record. *O'Brien* v. *Shea,* 208 Mass. 528, 535 (1911). *Holiver* v. *Department of Pub. Works,* 333 Mass. 18, 20 (1955). *Petrangelo* v. *Pollard,* 356 Mass. 696, 703 (1970).

4. *Interest.*   The Wallachs contend that the decree should provide for interest either from the date of the agreement or from the date of the suit. Payment of interest would be in essence damages for the plaintiffs' failure to pay at the time agreed on. *Ratner* v. *Hill,* 270 Mass. 249, 253 (1930). But the delay was caused by the Wallachs' own repudiation of the settlement agreement, and interest was properly denied. *Davis* v. *Parker,* 14 Allen 94, 104 (1867).

> *Interlocutory decrees affirmed.*
> *Final decree affirmed with costs*
> *of appeal.*