CLINTON N. KOUFMAN & others[1] vs. NEW ENGLAND
MERCHANTS NATIONAL BANK OF BOSTON & another,
executors, & others.[2]

Suffolk.  September 13, 1979. — January 11, 1980.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*Estoppel. Practice, Civil,* Master: report of evidence. *Corporation,*
Close corporation, Stockholder's withdrawal of funds.

In an action seeking a declaration that a decedent was not indebted to a
    corporation at the time of his death on account of monies he had with-
    drawn from the corporation over a nine-year period, the plaintiffs
    were not estopped from denying that the disputed transactions were
    loans by the fact that the decedent did not include them as income on
    his personal tax returns or by the fact that two of the plaintiffs, co-
    executors of the decedent's will, listed the withdrawals as liabilities in
    the Federal estate tax return. [44-45]
In a civil action, there was sufficient evidence to warrant a finding that a
    decedent, at the time of his death, was not indebted to a corporation
    on account of monies he had withdrawn from the corporation over a
    nine-year period. [46-48]

BILL IN EQUITY filed in the Superior Court on March 22,
1974.

The suit was heard by *O'Leary*, J., a District Court judge
sitting under statutory authority.

*Richard M. Zinner* for the defendants.
*John M. Reed* for the plaintiffs.

_____

[1] William B. Koufman, Pearl M. Levin and James A. Koufman.

[2] Manuel M. Koufman, Koufman Development Corporation, Douglas
Koufman, Lisa Koufman, Jeanne O. Koufman, Beverly Tuttle,
Children's Cancer Research Foundation and David R. Andelman,
receiver of Koufman Development Corporation. The only defendants
who appealed from the judgment are Manuel, Douglas, Lisa and the
receiver.

PERRETTA, J.   Louis F. Koufman and his son, the defend-
ant Manuel M. Koufman, each owned fifty percent of the
issued and outstanding stock in the defendant Koufman De-
velopment Corporation (KDC) at the time of Louis' death
in 1965.   The plaintiffs are all beneficiaries of a trust es-
tablished under the residuary clause of his will.[3]   By this ac-
tion commenced in the Superior Court pursuant to G. L.
c. 231A, they sought and obtained a declaration that, at the
time of his death, Louis was not indebted to the KDC on ac-
count of monies he had withdrawn from that corporation
during the period of 1956 through 1965.   The defendants
appeal from the judgment, and they bring before us the
primary issue of whether these withdrawals were in the
nature of loans.   We hold that they were not and affirm the
judgment.

The complaint was tried before a master, who was re-
quired by an amendment to his order of reference to report
the evidence.   The defendants do not dispute the basic facts
found by him; rather, they quarrel with his ultimate find-
ings and conclusions, alleging that they rest largely upon er-
roneous inferences he drew from exhibits and uncontra-
dicted testimony.   They urge us to reach our own conclu-
sions and afford the inferences of the master no weight.
*Seder* v. *Gibbs,* 333 Mass. 445, 446-447 (1956). *Peters* v.
*Wallach,* 366 Mass. 622, 626 (1975).   However, on the basis
of our independent view of the record, we reach conclusions
identical to those of the master.   Further, we are con-
strained to comment that much of that which the defend-
ants describe as inferences flowing from the master's
"divination," "egregious speculation" and "blithe imputa-
tion" is traceable to direct evidence.   We recite the facts
which the master found and which we accept.

Louis' will established three trusts, and the defendant
bank is a trustee of each.   Trust B is for the benefit of Louis'
widow, the defendant Jeanne O. Koufman; the plaintiff

---

[3]In addition, the plaintiffs Clinton and William are executors of the
will with the defendant bank and Manuel.

James A. Koufman and the defendants Beverly Tuttle and the Children's Cancer Research Foundation are also entitled to certain monies under this trust. Trust B is of no significance in this appeal. Trust A consists of all of Louis' KDC stock, and the net income of this trust is for the benefit of Manuel during his life. Upon Manuel's death, his children, the defendants Douglas and Lisa, are to receive the net income until the younger of the two attains the age of thirty-one. Should Manuel predecease his children subsequent to that date, then the principal is to be divided and distributed to them, or to the survivor. Trust C consists of the residue of the estate. It is for the benefit of Louis' children, and grandchild James, the plaintiffs, and Manuel. The defendants here argue that the questioned withdrawals of money by Louis from the KDC were loans which the estate must now pay to the KDC from the funds of Trust C, the residuary estate.

The facts surrounding these withdrawals are complicated. During Louis' life he and Manuel were engaged in the real estate development and construction business. In pursuing their combined and individual interests in this field, each formed numerous corporations for varied but largely related purposes. Louis was the organizer and sole stockholder of the following businesses: the LSK Realty Corporation (LSK), the Koufman Construction Company (KCC), and the SSC Corporation (SSC). These corporations were formed in 1933, 1949, and 1959, respectively. Manuel served as an officer and director of the KCC from 1956 through 1961, and he received a weekly salary as a KCC employee; he owned no stock in this company. In 1953, 1955, and 1958, Manuel established the following businesses in which Louis had no interest or official voice: Koufman Construction of Boston, Inc. (KC of Boston), the Legion Development Corporation (Legion), and the ECD Corporation (ECD). The KDC was organized in 1956, and each of the men owned half of the issued and outstanding shares of stock; Louis was president, Manuel was treasurer, and both were directors. The master found that in "the conduct of

the business of KDC, as between themselves, Manuel and Louis considered themselves partners." From 1956 through 1965, Louis, Manuel, and their respective related corporations withdrew monies from the KDC. These withdrawals were carried on the books of the KDC as "charges," and they were designated on the KDC yearly financial statements under various descriptions; "due from officers," "due from officers and related companies," are examples of these designations. The amounts taken by each man, on behalf of himself and his corporations, were relatively equal. An excellent example of this equality of treatment is provided by a 1961 transaction in which the KDC obtained a $300,000 mortgage loan. Upon the KDC's receipt of this money, Louis and Manuel divided it between themselves in such amounts that the KDC books then indicated that each man, and his corporations, owed equal amounts to the KDC. The master found that these withdrawals and multiple corporations provided Louis and Manuel with a structure whereby the KDC's tax liability could be reduced when large profits were anticipated. Louis and Manuel would apply part of their salaries to their loan accounts to obtain new balances arrived at by "charges" less "credits." Such applications were paper transactions only. They would also withdraw funds on their accounts with KDC in the same years. As the KDC accountant testified, and the master found, KDC profits could thus be reduced without an increase in Louis' personal tax liability; he did not report these withdrawals as income on his personal tax returns.

Louis and Manuel never signed notes for the money they withdrew,[4] they never secured these withdrawals with col-

---

[4] Manuel testified that appropriate notes had been executed and kept in an office safe which was stolen. The KDC accountant testified that he had had access to this safe whenever he would need records or documents to substantiate his computations. He never saw any notes, not even on those occasions when he had looked through the safe. We accept the master's finding which inherently rests upon an issue of credibility, *Seder,* 333 Mass. at 446-447. The factor whether notes were executed was but one of many relied upon by the master in concluding the withdrawals were not loans.

lateral, and they made no provisions for the payment of principal or interest. When each took these funds, which were in relatively equal amounts throughout the years, he did not inform the other of the purpose for the withdrawal or that it was a loan. The KDC records do not indicate that the withdrawals were authorized by corporate votes, although Louis and Manuel voted yearly as directors to ratify all the corporate transactions of the previous year. In addition, the master found that Louis did not possess the ability to return the amount of the withdrawals to the KDC at any given time unless he used his personal real estate holdings, which would have been a substantial sacrifice because of inopportune times.

We deal first with the defendants' assertion that the plaintiffs are estopped from questioning the nature of the disputed transactions. They argue that Louis treated these advances as loans during his life and that he did not include them as income on his personal tax returns. As a result, he benefited from his conduct, and the estate, which stands in the same position as Louis, cannot now assert a contrary position to the detriment of the taxing authorities. They rely upon *Kurz* v. *United States*, 156 F. Supp. 99, 106 (S.D.N.Y. 1957), as support for their claim of estoppel. The master's findings establish that Louis neither treated nor regarded these advances as loans. The fact that he did not include them as income on his tax returns does not change the true character of his conduct in relation to the withdrawals. His failure to designate these monies on his tax returns in a true and honest fashion is improper, but that does not give rise to a claim of estoppel by the defendants. They did nothing in reliance upon Louis' tax returns, and they would suffer no detriment if the tax returns were to be corrected to reflect honestly the nature of the transactions. An estoppel is only available to a party who can, at the very least, demonstrate that he relied upon a position asserted and enjoyed by another who now seeks to change that position to the detriment of the first party.[5] *Industrial Bank-*

---

[5] Equitable estoppel is particularly unavailable to Douglas and Lisa, who had no interest either in, or flowing from, KDC stock at the time of

*ers of Mass., Inc.* v. *Reid, Murdoch & Co.*, 297 Mass. 119, 124 (1937). *Uccello* v. *Gold'n Foods, Inc.*, 325 Mass. 319, 329-330 (1950). *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 728 (1974), *S.C.*, 368 Mass. 811 (1975). See also *Horn* v. *Cole*, 51 N.H. 287 (1968); 2 Pomeroy, Equity Jurisprudence § 805 (4th ed. 1918); McClintock, Equity § 31, at 79-81 (2d ed. 1948). The cases relied upon by the defendants do not contradict these authorities; rather, they are factually inapposite to the present situation.[6] For these reasons estoppel is equally unavailable to the defendants on their claim that certain actions of the coexecutors precludes relief to the plaintiffs. The defendants point to the Federal estate tax return, Form 706, where the coexecutors listed the withdrawals as liabilities on Schedule K. However, the master found that when this return was prepared and filed, the plaintiffs Clinton and William (see note 3, *supra*) were relying upon a representative of the defendant bank and the then counsel for the estate, both of whom believed that the advances were loans. Whether those plaintiffs' reliance was not in good faith so that they are estopped by their conduct "is a question of fact and in the present circumstances it could not have been ruled as a matter of law." *Quality Fin. Co.* v. *Hurley*, 337 Mass. 150, 155 (1958). The master's finding that Clinton and William's act, as coexecutors, did not give rise to an estoppel rests upon ample evidence and we will not set it aside.[7]

---

Louis' questioned conduct. See e.g., *Bangor Punta Operations* v. *Bangor & A. R.R.*, 417 U.S. 703, 710-712 (1974); *Home Fire Ins. Co.* v. *Barber*, 67 Neb. 644, 661-662 (1903); Annot., 16 A.L.R.2d 467, 497 (1951).

[6] The defendants rely upon cases in which the demonstrated detriment in support of the claim of estoppel was suffered by a party to the litigation.

[7] The defendants' claim of estoppel takes on no new force by reason of the fact that the Internal Revenue Service audited some of Louis' income tax returns, some KDC income tax returns for years different from Louis' audited returns, and the estate tax return. An audit does not even rise to the level of a decision on a question of Federal tax law, an issue which is not involved in our review, and we give no consideration to the fact of these audits. See *Blair* v. *Commissioner*, 300 U.S. 5, 10 (1937); *Babson* v.

Having determined that the plaintiffs are not estopped from contesting the validity of the alleged debts, we turn to examine the master's findings and conclusion that the estate is not indebted to the KDC. He concluded from the evidence that Louis and Manuel "treated themselves substantially as equals in the distribution of [KDC] cash and profits." The defendants take vigorous exception to this as well as to all the findings which demonstrate the equal treatment which existed between the two men. Based upon our examination of the testimony and documents presented, we agree with the master's conclusion as to equal treatment. *Peters* v. *Wallach, supra.* The manners and methods employed by the two men in withdrawing funds throughout the years here material were identical. The master's findings concerning the circumstances attendant on these withdrawals touch upon all the factors generally relied upon to determine the nature of a questioned transaction like the one before us. While such a determination is usually made for the purposes of ascertaining tax liability, we see no reason for not applying those criteria here to reach a factual determination of the same issue — whether the withdrawals are in the nature of loans — even though the purpose for resolving it is different. As stated in *Koufman* v. *Commissioner*,[8] 35 T.C.M. 1509, 1522-1523 (CCH 1976):

"[T]he issue of whether shareholder withdrawals are bona fide loans is a question of fact which requires consideration and evaluation of the surrounding circumstances. . . . In making such examination, it is of controlling significance to inquire whether the parties intended to create bona fide indebtedness which the

---

*Babson,* 374 Mass. 96, 101-102 (1977); *Dana* v. *Gring,* 374 Mass. 109, 113-114 (1977); *Levine* v. *Amber Mfg. Corp.,* 6 Mass. App. Ct. 840 (1978).

[8] This tax court decision pertains to one of the defendants here, and it involves his personal tax returns for 1963 through 1969. Although it concerns Manuel's treatment of withdrawals from corporations owned or controlled by him, it does not involve any of the withdrawals in issue before us.

shareholder intended to repay and which the corporation intended to collect. . . . In discerning the parties' intention, the courts have relied on objective indicia, particularly when, as here, the withdrawals are made by a dominant or sole shareholder. . . . One significant objective criterion is whether the shareholder, at the time of the advance, could reasonably have expected to repay it. . . . It is also helpful to inquire whether evidences of indebtedness were executed, whether security was given for the withdrawals, and whether interest was paid. . . . The courts have also considered whether the indebtedness was due by a date certain, whether there was a fixed total limit on a shareholder's borrowings, and the amount of repayments made. . . . However, it must be kept in mind that the presence or absence of any of these indicia is not determinative; they are just helpful guideposts for the trier of fact who must determine, based upon all of the evidence, the crucial fact of whether repayment was actually intended."

See also *Commissioner* v. *Makransky,* 321 F.2d 598, 600-601 (3d Cir. 1963); *Berthold* v. *Commissioner,* 404 F.2d 119, 121 (6th Cir. 1968); *Livernois Trust* v. *Commissioner,* 433 F.2d 879, 882-883 (6th Cir. 1970); *Alterman Foods, Inc.* v. *United States,* 505 F.2d 873, 875-876 (5th Cir. 1974); Note, Stockholder Withdrawals — Loans or Dividends, 10 Tax.L.Rev. 569 (1954).

The defendants take particular issue with the master's findings on two of these considerations which touch upon Louis' intention to repay the advances. They point to a conversation between Louis and the KDC accountant during which Louis stated, "How does my account stand; what do I owe? How much does Manuel M. Koufman's account show?" The master found that this statement was an inquiry "as to the relative amounts charged against [Louis'] account and Manuel's account" and that it was not an acknowledgement by Louis that a loan existed. The defend-

ants' contention that this conclusion, in which we concur, is the result of the master's "indulge[nce] in his own conjecture" loses its merit when it is viewed against the entire testimony of the accountant and the documentary evidence. The defendants also urge that Louis possessed the ability to repay the advances. They call attention to the fact that his personal real estate holdings could have been refinanced in order to pay the loans. Even assuming this to be so, it is but one factor bearing upon Louis' intent to repay, and we will not view it to the exclusion of the other evidence. Based upon the evidence in its entirety, we are persuaded that Louis did not intend to repay the advances.

In light of our conclusion on this issue it is unnecessary to consider the defendants' remaining contentions which are dependent upon the existence of a debt.

*Judgment affirmed.*