No. 46,472

STATE OF KANSAS, *Petitioner*, v. LARRY L. KOPKE, *Respondent*.

(502 P. 2d 813)

Opinion filed November 4, 1972.

*Curt E. Schneider*, Assistant Attorney General, argued the cause, and *Vern Miller*, Attorney General, and *Edward G. Collister, Jr.*, Assistant Attorney General, were with him on the brief for the petitioner.

*Robert G. Foulston*, of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *George B. Powers*, of the same firm, was with him on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline. The respondent, Larry L. Kopke, as a member of the bar has been practicing law in Great Bend, Kansas, since 1963. This proceeding is the result of three complaints filed against the respondent. One of the charges involves solicitation of business and two charges involve conflict of interest. A hearing was held on the complaints by a three-man panel of the State Board of Law Examiners. The panel filed its report containing its findings and a recommendation that the respondent should be disciplined by public censure. The state board after consideration of the report of the hearing panel adopted the same and recommended to this court that the respondent should be disciplined by public censure. The respondent filed his exceptions to the report of the state board and the matter is now before this court for determination.

The first charge has been designated by the parties as the "Napolitano matter." The testimony at the hearing disclosed that on September 22, 1968, respondent was at the Central Kansas Medical Center in Great Bend on behalf of his church to give communion to patients at the hospital. There he met James Napolitano whose son had been injured the day before in an automobile accident. Napolitano was respondent's mailman in Great Bend and they were well acquainted. According to the testimony of the Napolitanos, respondent stated that he was sorry to hear about the Napolitano boy and asked if there was anything that he could do. Mr. Napolitano asked respondent if he would look into it and find out what happened. Mr. Napolitano testified that he did not intend to hire

Kopke at that time. The next day the Napolitanos received a copy of a letter directed to the driver of the vehicle stating that respondent represented them and requested the driver not contact the Napolitanos further but to contact only Kopke. Respondent contended that Mr. Napolitano requested that he arrange it so that Mrs. Napolitano would not be disturbed about the accident. Mr. Napolitano did not remember making such a request. Mr. and Mrs. Napolitano testified that they did not want to file a lawsuit because of the possible expenses involved; that all they wanted was to find out what had happened and asked their friend, the respondent, to find out for them. Thereafter respondent persuaded the Napolitanos to sign a medical authorization, to file suit and finally to go to trial. The Napolitanos testified that they understood that they would not be liable for any costs or expenses of litigation. Respondent was to handle the matter for them on a ⅓ contingent fee basis. The respondent, Larry L. Kopke, testified that it was understood that the Napolitanos were to pay the expenses of litigation in the event there was no recovery. It is clear from the record that the Napolitanos received and paid a few minor expense bills of $20 for photographs and $2.70 for the court reporter. The night before trial the Napolitanos asked Kopke what other expenses there would be and Kopke estimated they would be around $100 to $150; after the trial Kopke said they would be $300 to $350. The Napolitanos later received a bill of $608 which arose from the necessity of paying the expert fee of a medical witness and the cost of a deposition which was used in part at the trial. The jury found against the Napolitanos and for the driver of the motor vehicle in the personal injury action.

The thrust of the first charge is that the Napolitanos really did not want to file a lawsuit because of the expense; all they wanted to find out was what had happened. Their complaint is that the case was filed and was tried as a result of Kopke's persuading them to proceed against their will. The hearing panel and the state board found from consideration of all the evidence that the conduct of the respondent constituted solicitation of business in that the complainants were persuaded by respondent to file a lawsuit and go to court when they did not so desire and when they understood it would be at respondent's expense. We find that the charge of solicitation is not sustained by clear and convincing evidence in this case. It is clear that the problem between respondent and the

Napolitanos arose primarily from lack of communication—the fact that Mr. Kopke did not take time to develop a full understanding with his clients about who should bear the impact of the expenses of litigation. Also respondent may have well been overly zealous to file a case and proceed to trial. However, we agree with the respondent that there was not sufficient evidence of solicitation of business to sustain the charge in the "Napolitano matter."

The second charge involves a claim of conflict of interest and has been designated by the parties as the "Stanley Mai matter." This complaint was received from the Barton County Bar Association. The evidence in the record discloses that Stanley Mai lived in Great Bend, Kansas, where he was employed by Sun Oil Well Cementing Company. On December 13, 1963, he was in an automobile accident in which he suffered injury to his teeth and to his knee. The respondent, Larry L. Kopke, as Mai's attorney filed an action and represented him in his claim for personal injury in the United States District Court for the District of Kansas. The issues in that case covered liability for the collision and also the nature and extent of the injuries sustained by Mai. While the federal court case was still pending, Mai suffered injury to his back in the course of his employment at Sun Oil Well. Without being represented by counsel Mai claimed workmen's compensation and settlement was made with his employer. Later Mai suffered a second back injury while working on his job.

It is clear from the record that Mai was a longtime employee of Sun Oil Well, apparently well liked by the company and considered a valuable employee. When Mai notified respondent of the second injury to his back, respondent advised Mai to get another attorney if he wished. Mai, however, felt he did not need an attorney and therefore filed the workmen's compensation claim himself. Respondent Kopke called Mai and stated that he, Kopke, would represent Sun Oil Well and its insurance carrier at the hearing on Mai's claim. Kopke also advised Mai that there would be a hearing to determine whether Sun Oil Well or the Second Injury Fund should pay workmen's compensation to Mai. The company impleaded the Second Injury Fund and the matter proceeded to a hearing. At the initial hearing the workmen's compensation examiner, Hugh Mauch, became concerned as to the need for Mai to be represented by counsel and told Mai that he had better hire an attorney. Following this hearing Mai consulted John Carpenter, another attorney of Great Bend, Kansas, who represented him in

further prcoeedings. One of the issues in the workmen's compensation case was the nature and extent of the injury which Mai suffered to his back while on the job. The respondent Kopke called Dr. Brown as a witness on behalf of Sun Oil Well and its insurance carrier. Dr. Brown rated the claimant's disability as 5% of the body as a whole. Dr. Joyce, who was called by John Carpenter on behalf of the claimant Mai, rated his disability at 25%. The examiner found Mai's disability to be 20% of the body as a whole and ruled further that the Second Injury Fund was not liable. The respondent Kopke appealed the finding, maintaining that the Second Injury Fund was liable.

Mr. Carpenter was concerned about the relationship between respondent and Mai due to respondent's continuing representation of Mai in the personal injury case still pending in federal court. Carpenter filed a motion in the workmen's compensation proceeding asking that respondent be required to withdraw as attorney for Sun Oil Well and its insurance carrier in the workmen's compensation proceeding. Respondent opposed the suggestion but finally acceded to the district judge's suggestion that he withdraw. He withdrew as counsel for Sun Oil Well after the case reached district court. The respondent contends that he never did any thing to reduce the amount of Mai's recovery or to oppose his claim in any way; that his sole point of contest sought to impose payment of Mai's claim on the Second Injury Fund rather than on the insurance carrier of Sun Oil Well. Although respondent urges that he conceded the nature and extent of Mai's back injury, the record discloses otherwise. As pointed out heretofore, Kopke called a medical expert on behalf of Sun Oil Well who testified that Mai's permanent disability was only 5%, whereas claimant's medical witness testified that Mai's medical disability was 25%. It is clear from the record that respondent cross-examined claimant's medical witness Dr. Joyce about the nature and extent of Mai's disability.

Actually Stanley Mai found nothing questionable about Mr. Kopke's conduct and did not complain at the hearing before the panel in this case. Notwithstanding the friendly attitude of Mai toward respondent we agree with the state board that there was a conflict of interest present in the "Stanley Mai matter." Canon 6 of the Canons of Professional Ethics, no longer in force but applicable at the time of hearing, declares that a lawyer represents conflicting interests:

". . . when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."

The State Board of Law Examiners found that because of the "special relationship" between Kopke and Mai, Mai could have felt secure in not obtaining other counsel to represent him in the claim, particularly if assured by respondent that the company wanted Mai to have all he was entitled to. The state board also noted Canon 9 of the Canons of Professional Ethics which reads in part as follows:

"It is incumbent upon the lawyer most particularly to avoid everything that may tend to mislead a party not represented by counsel, and he should not undertake to advise him as to the law."

We agree with the state board and find that there is a clear conflict of interest presented in the evidence. Regardless of what respondent could have thought or done, or what Mr. Mai could have thought or done, it is obvious that such a special relationship did in fact exist which demanded that respondent either withdraw or absolutely insist that Mr. Mai secure independent counsel.

The third complaint has been designated as the "Dorothy Cropp matter." The evidence discloses that in May of 1967 Dorothy Cropp employed Mr. Kopke to represent her in a divorce case to be filed on her behalf. Respondent prepared the papers but could not get Mrs. Cropp to return and sign them nor could he get her to pay the $75 balance of the $100 retainer fee which she had agreed to pay. He finally closed the file and accepted the $25 as a partial payment on his fee. It later developed that Mr. Cropp had secured an Oklahoma divorce and that in order to enable him to do so Mrs. Cropp had signed an Entry of Appearance. The divorce decree required Mrs. Cropp to pay certain bills of the couple, including one owed to Sears Roebuck and Company in the amount of $322.09. In early October 1967, Mrs. Cropp sought respondent's legal assistance to compel her ex-husband, Gary Cropp, to pay these bills including the Sears account. In October and November 1967 respondent sought by correspondence with Gary Cropp and his Oklahoma attorney to have the Oklahoma divorce decree changed in order to require Gary Cropp to pay the bills. The ex-husband refused.

The problem arises in this case because of the fact that respondent regularly represented Sears on its collections and in November 1967, actually received the unpaid Cropp account for collection. On November 22, 1967, the respondent wrote a letter to Mrs. Cropp

advising her that he had been contacted by Sears in regard to the balance of the account and that he was continuing to work on the possibility of getting Gary Cropp to pay the balance. He suggested that Mrs. Cropp make arrangements with Sears to make partial payments on the account. In this letter respondent suggested that Dorothy Cropp come in and discuss the matter with him. She did not do so. Again early in February of 1968, he suggested Mrs. Cropp come to his office for a discussion and again there was no response. On February 23, 1968, the respondent wrote Sears suggesting that a suit be filed against Mrs. Cropp to collect the account. In this letter respondent stated that he would be using a legal technicality approach to collect this money from Mr. Cropp. The lawsuit would be filed by respondent for Sears with the full knowledge and consent of Mrs. Cropp. After the lawsuit was filed against Mrs. Cropp, Kopke then would implead her ex-husband as a third-party defendant and attempt to get him to pay the bill to Sears. He suggested to Sears that Mrs. Cropp understood that the debt was her obligation to pay if Mr. Cropp did not pay it. A copy of this letter was mailed to Mrs. Cropp. On or about March 27, 1968, respondent filed a suit on behalf of Sears against Mrs. Cropp and Gary Cropp. About the time suit was filed respondent wrote Mrs. Cropp advising her that he had filed suit against Gary Cropp and herself but that he would continue to work toward the end of getting Gary Cropp to pay this amount. On July 30, 1968, judgment was entered in favor of Sears against Dorothy Cropp in the amount of $322.09 and judgment was also entered in favor of Gary Cropp. A reading of the record discloses a great deal of confusion as to who Mr. Kopke actually represented in the Sears suit against Mr. and Mrs. Cropp. We note for example that on February 28, 1968, Kopke billed Mrs. Cropp for his services as an attorney including charges for telephone conferences with Harold Walls, credit manager of Sears, and charges for correspondence with Walls in regard to filing the suit. Reminders were sent by respondent to Mrs. Cropp in regards to this unpaid bill both before and after suit was filed. It is certainly understandable in this case why Mrs. Cropp concluded that she was being represented in the Sears litigation by respondent in view of the fact that she was being billed for the services discussed above. It is difficult to see how respondent can reasonably deny representing Mrs. Cropp in the Sears matter when he billed her for telephone conferences and correspondence with Sears' credit manager. Mrs. Cropp testified that respondent told her that she

would get a summons on the Sears account suit but not to worry about it. The journal entry of judgment showed that Kopke appeared on behalf of Sears, that Mr. Cropp was represented by his attorney but that Mrs. Cropp appeared neither in person or by attorney. Respondent later sent Mrs. Cropp a copy of the judgment entered in favor of Sears against her; the accompanying letter contained a threat of garnishment proceedings if a payment schedule was not worked out. Shortly thereafter respondent withdrew from any further representation of Mrs. Cropp. Mrs. Cropp testified that she thought Mr. Kopke's actions in the Sears matter were "funny" and she didn't think he had done it right.

She complained to the Barton County Bar Association whose committee suggested that Mr. Kopke pay off the full amount of the Sears judgment which he did. The hearing panel and the State Board of Law Examiners found a conflict of interest in respondent's representation of Sears in its suit against Dorothy Cropp to recover the Sears account. We agree.

We have concluded that the recommendation of the state board that the respondent, Larry L. Kopke, be disciplined by public censure should be accepted by this court. While there was nothing about respondent's conduct that amounted to fraud, dishonesty or moral turpitude, nevertheless in the Stanley Mai and Dorothy Cropp matters we find a violation of the canons discussed above pertaining to a conflict of interest.

It is therefore by the court considered, ordered and adjudged that Larry L. Kopke be and he is hereby censured by this court. Costs of this proceeding are taxed to respondent.

OWSLEY, J., not participating.