Eugene HAYES and Judy Hayes,
Plaintiffs-Appellants,

v.

EAGLE–PICHER INDUSTRIES, INC.,
Defendant-Appellee.

No. 74–1331.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 21, 1975.

Decided April 4, 1975.

David J. Waxse, Payne & Jones, Chartered, Olathe, Kan. (J. Eugene Balloun, Payne & Jones, Chartered, Olathe, Kan., on the brief), for plaintiffs-appellants.

Bill E. Fabian, McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendant-appellee.

Before BREITENSTEIN, HILL and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The controversy with which we are here concerned is whether the plaintiffs'-appellants' repudiation of a settlement agreement entered into by their attorney on the eve of trial was justified. The attorney represented not only the appellants but also was the attorney for 16 others. In addition to the appellants, Eugene and Judy Hayes, three other members of the group voted against acceptance. The clients and the attorney had entered into a prior agreement that the majority rule would govern acceptance of a settlement, but the appellants and two other plaintiffs testified that they had never agreed to be bound by the majority.

The cause was set for trial on July 10, 1973. On the evening prior to this date, extensive settlement negotiations were carried on. Defendant-appellee offered a total of $155,000 for distribution to the entire group. When on the morning of

the trial this offer was presented to the plaintiffs, there was a vigorous debate. At last, 13 voted for acceptance and five voted against it. Following the taking of the vote, an announcement was made in open court that the majority had agreed to settle. Thereupon, the trial judge inquired if any of the plaintiffs were opposed to the settlement; he received no answer. The two Hayes', who are the only members of the group who are now before the court, said that they did not hear what the judge said. The court then reduced the settlement to judgment. The appellants protested the settlement immediately and continued to do so on several occasions with considerable vigor, so much so that on July 23, 1973, the trial court held a hearing and set aside the judgment it had entered July 10. The appellants discharged their attorney on that occasion.

Next, on September 24, 1973, the trial court held a hearing on the *defendant's-appellee's* motion to reinstate the judgment. On December 14, 1973, the court did reinstate the judgment,[1] and that is the posture of the present submission.

The Hayes' contentions are that they at no time gave their attorney authority to enter into a settlement on their behalf. Secondly, they say that they repudiated his effort immediately after becoming aware of it. Appellee's position is, of course, that a consent to be governed by the vote of the majority was

given and since the majority approved, the settlement is binding.

### I.

■ It is fundamental that an attorney does not by reason of his employment have authority to compromise his client's cause of action absent an emergency requiring prompt action. Numerous cases enunciating this are noted in Annotations 30 A.L.R.2d 944, 945 (1953) and 56 A.L.R.2d 1290, 1291–92 (1957). Our court has recognized and applied this well recognized rule in the relatively recent decision in Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 136 (10th Cir. 1966). While there are some cases which say that a presumption exists that the attorney of record has authority to settle his client's claim, if such a presumption exists it is rebutted easily and it has no application here because the questions are, first, whether the "majority rule" agreement was entered into and, second (if so), whether it is enforceable.[2]

It is not to be denied that the appellants were at all times opposed to the compromise of the cause and communicated this to the lawyer, and indeed Mr. O'Keefe, the attorney, announced in open court that the settlement was a result of "majority rule." So the court as well as defendant-appellee was fully aware that some of the plaintiffs had

---

1. The court's opinion contained the following findings:

   After reviewing the evidence, the Court is fully satisfied, and so concludes that there was no fraud, misrepresentation or misconduct on the part of the defendant Eagle-Picher Industries, Inc., in connection with the *settlement, and that there was no fraud upon the Court in connection with the settlement.* The Court likewise finds that there was no fraud in connection with the settlement upon the part of Mr. O'Keefe, who candidly stated, in open court, on July 10th that no (sic) all of the plaintiffs had agreed to settle, but had agreed to be bound by a majority rule, which favored settlement. The defendant entered into a good faith settlement with the attorney of record for plaintiffs for a substantial sum of money. *The Court finds that Mr. O'Keefe,*

   as attorney for plaintiffs, had apparent, and actual authority to accept this settlement on behalf of his clients. The terms of this settlement were fully set out in open court on July 10th. The Court invited objections from anyone, and hearing none, entered a judgment upon the settlement. Absent fraud upon the Court, or misconduct or fraud upon the part of defendant, any complaint a plaintiff may have with reference to the actions of his retained counsel with reference to his particular case can have no bearing upon the validity of the judgment entered in this action on July 10.

2. *See* Hot Springs Coal Co. v. Miller, 107 F.2d 677 (10th Cir. 1939); Feldman Investment Co. v. Connecticut General Life Ins. Co., 78 F.2d 838 (10th Cir. 1935); Hill v. Mendenhall, 21 Wall. 453, 22 L.Ed. 616 (1875).

not consented to the terms of the settlement.

## II.

In Thomas, *supra,* there was a James Thomas and a Boyd Thomas who were parties defendant. The attorney representing them had the express approval of James Thomas to make the proposed settlement. He did not have the authority of Boyd Thomas. The trial court after entering judgment refused the petition of Boyd Thomas to reopen the judgment. We held that the trial court abused its discretion in holding that the lawyer had authority to settle a case without express authority from Boyd Thomas.

In our case the relationship between the clients and the attorney involved was somewhat different and more complicated since it did allow the attorney to settle the case over the express objection of his clients. In our view, however, this arrangement is contrary to the plain duties owed by an attorney to a client. An agreement such as the present one which allows a case to be settled contrary to the wishes of the client and without his approving the terms of the settlement is opposed to the basic fundamentals of the attorney-client relationship. Inasmuch as the attorney is merely an agent for the client in negotiation and settlement, the approval of the client is an all important essential to a settlement which is to be binding, and if this approval is not present the court is placed in a most unfavorable position in enforcing it.

One other aspect which complicates the problem is the fact that the agreement calling for the majority governing the decision to settle was entered into some time prior to the date of negotiations. It is difficult to see how this could be binding on non-consenting plaintiffs as of the time of the proposed settlement and in the light of the terms agreed on. In other words, it would seem that plaintiffs would have the right to agree or refuse to agree once the terms of the settlement were made known to them.

■ A further difficult aspect in the enforcement of such an agreement is the ethical problem which is posed for the attorney who is bound by Rule 5–106 of the Code of Ethics promulgated by the Kansas Supreme Court which requires the attorney to refrain from participating in a settlement on behalf of two or more clients unless each of them consents to it. In view of this, it was untenable for the lawyer to seek to represent both the clients who favored the settlement and those who opposed it. *Cf.* State Farm Mutual Auto Ins. Co. v. Walker, 382 F.2d 548 (7th Cir. 1967); State v. Kopke, 210 Kan. 330, 502 P.2d 813 (1972); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

## III.

■ Appellee's final contention in support of the agreement is that the appellants failed to speak out when the court made an inquiry as to whether there were any objections to the settlement. It is said that this was a ratification. However, the cases recognize the right of litigants to set aside a compromise to which they do not agree. The cases hold that where clients unequivocally repudiate an unauthorized agreement immediately after learning of it (and this means a few days or reasonable time), the compromises are to be set aside. *See* Annot., 30 A.L.R.2d 957; *see also* Harris v. Diamond Constr. Co., 184 Va. 711, 36 S.E.2d 573 (1946) (within 60 days); and Baumgartner v. Whinney, 156 Pa.Super. 167, 39 A.2d 738 (1944). Four years has been held unreasonable. *See* Baumgartner v. Whinney, *supra.* *See also* Dunlap v. Villareal, 91 S.W.2d 1124 (Tex. Civ.App.1936); National Bread Co. v. Bird, 226 Ala. 40, 145 So. 462 (1933); Fillhardt v. Schmidt, 291 Ky. 668, 165 S.W.2d 155 (1942).

■ In sum, then, we conclude that the trial court erred in reinstating its judgment. We hold that the arrangement presented allowing the majority to govern the rights of the minority is violative of the basic tenets of the attorney-client relationship in that it delegates to

the attorney powers which allow him to act not only contrary to the wishes of his client, but to act in a manner disloyal to his client and to his client's interests. Because of this, it is essential that the final settlement be subject to the client's ratification particularly in a non-class action case such as the present one.

Accordingly, then, the judgment of the district court must be reversed and the cause remanded to the district court for further proceedings consistent with the views expressed herein.

It is so ordered.[3]

---

3. We are not to be understood as criticizing the professional conduct of the trial attorney for the appellants. Furthermore, the attorneys on this appeal who represent the plaintiffs did not try the case. Undoubtedly plaintiffs'-appellants' attorney at the trial acted in good faith in handling a complex matter in which he was having to represent the interests of a number of clients.