In re The Petition of MAL DE MER FISHERIES, INC. for Exoneration from Limitation of Liability, Civil and Maritime.

Civ. A. No. 94–10211–PBS.

United States District Court,
D. Massachusetts.

April 12, 1995.

Michael B. Latti, Latti Associates, Thomas J. Muzyka, Clinton & Muzyka, Boston, MA, for petitioner Mal de Mer Fisheries Inc.

Edward J. White, New Bedford, MA, for claimant Susan DeJesus.

Michael B. Latti, David F. Anderson, Latti Associates, Boston, MA, for claimants Cheryl Costa, Victor Perreira.

## MEMORANDUM AND ORDER ON PETITIONER'S MOTION TO ENFORCE SETTLEMENT

SARIS, District Judge.

Petitioner Mal de Mer Fisheries, Inc. moves the Court to enforce a settlement negotiated between claimant Cheryl S. Costa and petitioner Mal de Mer Fisheries, Inc. in the amount of $115,000.00 (Docket No. 75). For the reasons herein stated, the motion is **ALLOWED.**

### Factual Background

The Court treats the following facts as undisputed for purposes of this motion. On January 31, 1994, the F/V SHANNON III sank off the coast of Massachusetts while engaged in a fishing operation. As a result of the sinking two crewmembers, Robert De-Jesus and Wayne Costa, were lost and presumed drowned. A third crewmember, Victor Pereira, was the sole survivor of the incident.

On February 2, 1994, the vessel's owner, Mal de Mer Fisheries, Inc., filed a petition for Exoneration from or Limitation of Liability. Cheryl Costa and Susan DeJesus, both represented by attorney Edward White of the law firm of Hunt & White, opposed the petition and filed claims on behalf of the estates of Wayne Costa and Robert DeJesus respectively. Victor Pereira, represented by attorneys Michael B. Latti and David F. Anderson of the law firm of Latti Associates, also filed a claim opposing the petition.

The matter was scheduled to commence a non-jury trial before Senior Circuit Judge Bailey Aldrich on December 19, 1994. On December 13, 1994, however, petitioner's counsel, Thomas J. Muzyka and Robert E. Collins, twice met with attorney White to discuss the possibility of settlement.[1] On December 14, 1994, petitioner's counsel received authority to settle both the Costa and DeJesus death claims for an aggregate amount of $485,000.00 and notified attorney White of the same.[2] That afternoon claimant Costa met with attorneys White and Hunt to discuss settlement. Her attorneys did not inform her of petitioner's offer at this time.

Claimant Costa, accompanied by her two brother-in-laws, again met with her attorney on December 15, 1994 at approximately 5:00 p.m. At this meeting, attorney White informed Costa that the insurance company offered $115,000.00 to settle her claim, but did not disclose that petitioner's offer was in the aggregate. In fact, Costa claims that attorney White stated that her settlement offer "had nothing to do with the DeJesus settlement." Aff. Costa at 2. However, Costa also states: "At this meeting (5:00 p.m. 12/15/94) Attorney White did inform me that

---

1. It is unclear whether attorney Thomas J. Hunt of the firm of Hunt & White also appeared.

2. Petitioner states that counsel received authority to settle both claims on December 15, 1994. The one day difference in date is not material.

the offer on the DeJesus claim was *three times the offer on my claim." Id.* at 2. (emphasis added). Costa refused to settle for $115,000.00 at this meeting, but later that evening returned alone to her attorneys' offices to continue discussions.

During this later meeting, Costa contends that attorney White was heavyhanded in pressuring her into consenting to the settlement. Specifically, Costa claims attorney White told her that she had to accept the offer, she could not get a jury trial, she could not get anything more for her claim, and that she could not go to trial. Aff. Costa at 2. After about thirty minutes, Costa told attorney White to "go ahead" with the settlement. *Id.* That same evening, attorney White contacted petitioner's counsel and apprised counsel that Costa had agreed to settle for $115,000.00.

At a lobby conference on December 19, 1994, counsel reported to the court that the Costa and DeJesus had settled. As a result of the reported settlement, Judge Aldrich continued the matter until March 6, 1995.

Thereafter, attorney White sought to have claimant Costa sign releases but to no avail. However, claimant Susan DeJesus executed a release to obtain the settlement draft. On January 10, 1995, Costa discharged attorney White and hired present counsel.

Petitioner now moves to enforce the settlement agreement with claimant Costa in the amount of $115,000.00. Claiming that a factual dispute exists as to the formation and terms of the alleged settlement agreement, Costa requests an evidentiary hearing on the petitioner's motion to enforce. In the event that the court enforces the settlement agreement, Costa argues that because attorney White unilaterally divided the aggregate settlement offer between the Costa and DeJesus, the court should hold a separate hearing to determine the relative strengths and weaknesses of each claim.

**3.** Where, however, the settlement agreement is made part of an order dismissing the case, the court would have ancillary jurisdiction to enforce the agreement as breach thereof would constitute

## Conclusions of Law

### 1. *Court's Inherent Authority to Enforce Settlement*

Prudential concerns favor settlement as a preferred alternative to litigation. *Mathewson Corp. v. Allied Marine Industries, Inc.,* 827 F.2d 850, 853 (1st Cir.1987). *Accord United States v. Cannons Eng'g Corp.,* 899 F.2d 79, 84 (1st Cir.1990) ("it is the policy of the law to encourage settlements"); *Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1015 (D.C.Cir.1985) ("[s]ettlement agreements are in high judicial favor"). Accordingly, when parties voluntarily enter into a settlement agreement, it cannot be repudiated by either party, and the court will summarily enforce the agreement. *Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1015 (D.C.Cir.1985) (diversity action case to enforce settlement agreement).

■ The court's inherent power of enforcement, however, is limited to cases pending before it. *United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir.1993) (trial court may summarily enforce a settlement agreement while the litigation is pending before it); *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987) (same); *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.1976) (same), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976).

■ When a complete settlement has been reached and the case dismissed, enforcement of the agreement sounds in contract requiring "its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co.,* —— U.S. ——, ————, 114 S.Ct. 1673, 1675–76, 128 L.Ed.2d 391 (1994).[3] *See also Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 536 (1st Cir.1993) (Keeton, D.J., dissenting) (mootness of settled controversies); *Catullo v. Metzner,* 834 F.2d 1075, 1078 (1st Cir.1987) (suit for breach of a settlement agreement is a separate cause of action); *Hamilton v. School Committee of Boston,* 725 F.Supp. 641, 643 (D.Mass.1989) (discussing court's jurisdiction).

a violation of the court order. *Kokkonen v. Guardian Life Ins. Co.,* —— U.S. at——, 114 S.Ct. at 1677.

The federal courts have jurisdiction to enforce settlement agreements when necessary "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees". *Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1676 (citations omitted). Here, counsel reported to the court that the claim of the two widows had settled on the day the action was scheduled for a non-jury trial. This necessitated a continuance of the portion of the case involving the claim of the surviving crewman. Thus, the court retains the inherent authority to enforce the settlement to vindicate its authority to manage its own proceedings. *See Hadwari v. Keystone Shipping Co.,* 762 F.Supp. 426, 427 (D.Mass. 1991) (Aldrich, J.) (summarily enforcing settlement agreement against defendant in admiralty case where the court was informed that settlement was reached during trial and the jury was discharged). *See also Correia v. DeSimone,* 34 Mass.App.Ct. 601, 614 N.E.2d 1014, 1016 (1993) ("The integrity of the judicial process would be ill served if those intimately involved in that process, litigants, attorneys and judges, could not rely on declarations of settlement made in open court.").

### 2. *No Need for Evidentiary Hearing*

Even where a court retains jurisdiction over the controversy, summary enforcement is inappropriate and the parties are entitled to an evidentiary hearing if material facts are in dispute concerning the very existence or terms of the agreement. *Wilson v. Wilson,* 46 F.3d 660, 664 (7th Cir.1995). *Accord United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir.1993) (finding trial court abused its discretion by summarily enforcing a settlement agreement where attorney representations of material facts regarding the reaching of a settlement conflicted); *Callie v. Near,* 829 F.2d 888 (9th Cir.1987) (finding an abuse of discretion by trial court's failure to conduct an evidentiary hearing where intent of the parties and material terms of the agreement were in dispute); *Russell v. Puget Sound Tug & Barge Co.,* 737 F.2d 1510, 1511 (9th Cir.1984) ("Summary enforcement of a settlement agreement 'is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactory resolve.' "); *cf. Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir.1976).

Likewise, summary enforcement is improper when the authority of an attorney to enter into a settlement agreement on behalf of his client is in dispute. *See Petty v. Timken Corp.,* 849 F.2d 130, 132 (4th Cir. 1988) (upholding summary enforcement of settlement agreement where litigant voluntarily accepted an offer of settlement but later repudiated claiming inadequate counsel); *Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386, 391 (5th Cir.1984) (evidentiary hearing necessary to resolve conflicting affidavits as to attorney's authority to settle the dispute); *Millner v. Norfolk & Western Railway Co.,* 643 F.2d 1005, 1009 (4th Cir. 1981) (evidentiary hearing required to determine whether attorney had authority to bind client to settlement agreement).

### 3. *An Attorney's Settlement Authority*

Here there is no need for an evidentiary hearing as the court concludes that even if all inferences are drawn in favor of claimant, she does not prevail. It is undisputed that attorney White represented claimant Costa, and that as her counsel, White accepted petitioner's settlement offer in the amount of $115,000.00. *Interstate Commerce Comm'n v. Holmes Transportation, Inc.,* 983 F.2d 1122, 1128 (1st Cir.1993) (determination of attorney-client relationship is a question of fact). Thus, the resolution of this controversy hinges on whether attorney White had authority to bind his client Cheryl Costa.

The authority of an attorney to consummate settlement agreements does not derive by virtue of his employment as counsel. *Michaud v. Michaud,* 932 F.2d 77, 80 (1st Cir.1991). *Accord Interstate Commerce Comm'n v. Holmes Transportation, Inc.,* 983 F.2d 1122, 1129 (1st Cir.1993) (general powers of an attorney to represent a client do not encompass the authority to settle a case); *Garabedian v. Allstates Eng'g Co.,* 811 F.2d 802, 803 (3d Cir.1987); *Milewski v. Roflan*

*Co.*, 195 F.Supp. 68, 70 (D.Mass.1961). Where an attorney is merely an agent for his client with respect to negotiation and settlement, the client's approval is essential to completing a settlement. *See Hayes v. Eagle–Picher Industries, Inc.*, 513 F.2d 892, 894 (10th Cir.1975) (majority agreement to settlement held insufficient to bind nonconsenting parties). Rather, an attorney may only bind his client to a compromise where the client has authorized him to do so. *Michaud v. Michaud*, 932 F.2d 77, 80 (1st Cir.1991); *Garabedian v. Allstates Eng'g Co.*, 811 F.2d 802, 803 (3d Cir.1987). Thus, if Costa authorized attorney White to settle her claim in the amount of $115,000.00, the settlement agreement would be binding and any later repudiation by Costa would be ineffective. *Michaud v. Michaud*, 932 F.2d 77, 80 (1st Cir.1991).[4]

■ In the instant case, claimant Costa alleges that a factual dispute exists as to the formation and terms of the alleged settlement agreement. Nevertheless, Costa admits in her affidavit that she told attorney White to "go ahead" with the settlement in the amount of $115,000.00.[5] Costa also concedes that "as to the Petitioner, Attorney White had apparent authority." Finally, and most importantly, she concedes that White told her the offer on the DeJesus claim was three times the offer on hers. Although he did not inform Costa that the $485,000 was a package deal, that is not material in light of Costa's knowledge of the approximate amounts which she and the other widow would receive in the settlement. Acting on this authorization, attorney White informed petitioner's counsel that his client accepted its offer. Accordingly, this is not a case where a former attorney and client dispute the giving of authority thereby necessitating an evidentiary hearing. *Compare Michaud*

*v. Michaud*, 932 F.2d 77, 81 (1st Cir.1991) and *Milewski v. Roflan Co.*, 195 F.Supp. 68, 69 (D.Mass.1961) (denying motion to enforce settlement agreement finding attorney lacked authority to settle dispute). Costa cannot now complain that her attorney lacked authority to bind her to the very agreement to which she consented. *Michaud v. Michaud*, 932 F.2d 77, 80 (1st Cir. 1991); *see also Peters v. Wallach*, 366 Mass. 622, 626, 321 N.E.2d 806, 808 (1975) (affirming master's determination to specifically enforce agreement where master concluded that counsel had authority to accept settlement offer, that counsel accepted offer, and that there was not a great disparity between the settlement and the value of the claim).

### 4. *D.R. 5–106*

■ Costa contends, however, that because attorney White violated Disciplinary Rule 5–106 by failing to disclose that the settlement offer was an aggregate and by affirmatively representing that the DeJesus' settlement had nothing to do with her offer, he did not have actual authority to settle her claim. Disciplinary Rule 5–106 states:

"(A) A Lawyer who represents two or more clients shall not make or participate in the making of an aggregate settlement of claims of or against his clients, unless each client has consented to the settlement after being advised of the existence and nature of all claims involved in the proposed settlement, of the total amount of the settlement, and of the participation of each person in the settlement."

In support of this contention, Costa cites *Hayes v. Eagle–Picher Industries, Inc.*, 513 F.2d 892 (10th Cir.1975), in which the court reversed the enforcement of a settlement agreement on the ground the attorney had violated the ethical rule prohibiting an attor-

---

**4.** Federal law applies to the issue of an attorney's authority to settle a civil action brought under federal law. *Michaud v. Michaud*, 932 F.2d 77, 80 n. 3 (1st Cir.1991); *Vitko v. McOuade*, 1994 WL 504390, *3 n. 1 (D.N.H.1994), citing *Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850, 853 n. 3 (1st Cir.1987). *See also Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 389 (5th Cir.1984) (where the substantive rights of the parties derive from federal law, questions as to the enforceability or validity of

settlement agreements are determined by federal law).

**5.** It is axiomatic that "contracts depend on objective manifestations of consent and not on uncommunicated subjective expectations." *Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850, 853 (1st Cir.1987), quoting *Bushkin Associates, Inc. v. Raytheon Co.*, 815 F.2d 142, 146 (1st Cir.1987).

ney from participating a settlement on behalf of two or more clients without their consent.

Costa's reliance on *Hayes* is misplaced. Although the attorney in *Hayes* violated an ethical rule, the court based its reversal on the fact that not all clients had agreed to the settlement. The court held "that the arrangement . . . allowing the majority to govern the rights of the minority is violative of the basic tenets of the attorney-client relationship in that it delegates to the attorney powers which allow him to act not only contrary to the wishes of his client, but to act in a manner disloyal to his client and to his client's interests. Because of this, it is essential that the final settlement be subject to the client's ratification particularly in a non-class action case such as the present one." *Hayes v. Eagle–Picher Industries, Inc.*, 513 F.2d 892, 894–95 (10th Cir.1975). Next, Costa argues that because she was not fully informed as to the terms of the offer as required by Disciplinary Rule 5–106, she could not give informed consent to the settlement. *Cf. Brooks v. Walker*, 82 F.R.D. 95, 97 (D.Mass.1979) ("although some authority exists for the proposition that an attorney's misrepresentations to his client or his gross negligence, of which a diligent client is unaware, may be considered exceptional circumstances which fall within Rule 60(b)(6), [citations omitted], whether relief from judgment should be granted remains a matter of discretion for the district court."). Costa, through counsel, however, admits that she "grudgingly" agreed to settle her claim for $115,000.00, the amount which petitioner now seeks to enforce. While White may have inadequately represented her, that does not defeat the settlement.

> "When a litigant voluntarily accepts an offer of settlement, either directly or indirectly through the duly authorized actions of his attorney, the integrity of the settlement cannot be attacked on the basis of inadequate representation by the litigant's attorney. In such cases, any remaining dispute is purely between the party and his attorney. Unless the resulting settlement is unfair, judicial economy commands that a party be held to the terms of a voluntary agreement."

*Petty v. Timken Corp.*, 849 F.2d 130, 133 (4th Cir.1988) (internal citations omitted). "A litigant who enters the judicial process through the agency of a freely chosen counsel always assumes a certain risk that the result achieved will not be satisfactory. Defeated expectations do not, therefore, entitle the litigant to repudiate commitments made to opposing parties or to the court." *Id.; accord Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (finding no merit in contention that dismissal of petitioner's claim, due to counsel's unexcused conduct imposed an unjust penalty on the client). Moreover, even if there were an actual misrepresentation as to the nature of the settlement, that is not material because Costa knew how much both the other widow and she were getting.

### 5. *Fairness of Settlement*

■ There is no evidence here that the settlement is unfair. Costa has a life-threatening illness which creates a diminished life expectancy. She had been separated from her husband for several years and filed for divorce. New counsel claims that because he has not received the case file, he is unable to address the third consideration articulated in *Brooks v. Walker* of determining whether there is such a disproportion between the settlement and the value of the claim as to warrant denial of enforcement. *See id.*, 82 F.R.D. at 97; *Peters v. Wallach*, 366 Mass. 622, 624, 321 N.E.2d 806, 808 (1975). However, even if true, as Costa's new attorney represents the third crewmember, he is well aware of the merits of the case, and any information concerning Costa's personal problems is within new counsel's control.

Accordingly, Costa cannot be allowed to nullify the agreement to the prejudice of the petitioners who at all times acted in good faith. Rather, Costa's sole recourse is an action against attorney White for malpractice. *See Brooks v. Walker*, 82 F.R.D. 95, 98 (D.Mass.1979) (plaintiff's recourse for dissatisfaction with settlement agreement limited to a separate action against his attorney for malpractice). *Cf. Link v. Wabash Railroad Co.*, 370 U.S. 626, 634 n. 10, 82 S.Ct. 1386, 1390 n. 10, 8 L.Ed.2d 734 (1962) ("And if an attorney's conduct falls substantially below

what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice."); *Macktal v. Secretary of Labor,* 923 F.2d 1150, 1157–58 (5th Cir.1991) (no abuse of discretion in refusing to void settlement where attorney pressured client into consenting to settlement in light of "the ethical duties of an attorney to his client, the client's right to seek new counsel, and the availability of a direct action against the attorney"); *cf. Schwarz v. United States,* 384 F.2d 833 (2d Cir.1967) (remedy is suit against attorney where case is dismissed for failure to prosecute); *Brown v. E.W. Bliss Co.,* 72 F.R.D. 198 (D.Md.1976) (plaintiff's recourse for dismissal of case for failure to prosecute is against attorney).

### 6. *Enforceability*

■ Finally, the court notes that the fact that the settlement agreement was not reduced to writing does not bar its enforcement as the parties reported to the court that the claim was settled. *See Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.,* 741 F.Supp. 992, 999–1001 (D.Mass.1990), (noting statute of frauds does not bar enforcement of oral settlement agreement), *rev'd on other grounds,* 926 F.2d 92 (1st Cir.1991); *Correia v. DeSimone,* 34 Mass.App.Ct. 601, 614 N.E.2d 1014 (1993) ("There is a strong judicial interest in the prompt reporting of settlements which militates against permitting the Statute of Frauds to be raised as a defense to the enforcement of a settlement agreement"). *See also Warner v. Rossignol,* 513 F.2d 678, 682 (1st Cir.1975) (settlement agreement is an enforceable contract).

### ORDER

For the foregoing reasons, petitioner's motion to enforce the settlement agreement between Mal de Mer Fisheries, Inc. and Cheryl Costa (Docket 75) is **ALLOWED.** By April 28, 1995, the claimant is required to execute releases in the Petitioner's favor and, upon receipt, the Petitioner is required to pay the agreed upon settlement amount of $115,-000.00.