David M. **ABBOTT**, et al., **Plaintiffs**,

v.

**KIDDER PEABODY & CO., INCORPORATED**, et al., **Defendants**.

**No. Civ.A. 93–S–1709.**

United States District Court, D. Colorado.

March 19, 1999.

Laurence Jackson, Christa & Jackson, Los Angeles, CA, Layn R. Phillips, David Siegel, Irell & Manella, L.L.P., Los Angeles, CA, for plaintiffs.

Anne B. Frick, Jacobs, Chase, Frick, Kleinkopf & Kelley, L.L.C., Denver, CO, Lisa L. Casey, Holme, Roberts, & Owen, L.L.P., Denver, CO, James M. Lyons, Frederick J. Baumann, Rothgerber, Johnson & Lyons, L.L.P., Denver, CO, for defendants.

## ORDER

DANIEL, District Judge.

THIS MATTER is before the Court on Defendants' Motion to Declare Void and Unenforceable the Group Governance and Settlement Provisions of Plaintiffs' Attorney–Client Contract and to Disqualify Counsel filed July 31, 1998. This motion was referred to me by U.S. District Court Judge Daniel B. Sparr pursuant to an Order entered on November 10, 1998. However, aside from my ruling on this motion, Judge Sparr will preside over all other aspects of the case. Attorney Ann Frick and the law firm of Jacobs, Chase, Frick, Kelinkopf & Kelley, L.L.C. entered an appearance as co-counsel on behalf of the Plaintiffs on January 27, 1999. On January 28, 1999 a hearing was held on the pending motion. At the hearing, Defendants' counsel verbally amended their motion by requesting that Christa & Jackson only be disqualified from participating in settlement discussions.[1] After a careful review of the law and facts applicable to this issue, I conclude that Christa & Jackson should be disqualified from representing the Plaintiffs under the existing attorney-client agreement.

### *FACTUAL BACKGROUND*

This is a non-class action securities lawsuit involving over 200 plaintiffs who filed a single complaint. The focal point of the litigation is the Plaintiffs' individual investments in investment partnerships allegedly created by James Donahue (hereinafter "Donahue Partnerships"). To facilitate litigating a case involving such a large group of individual plaintiffs, the majority of the Plaintiffs agreed to be represented by a single law firm, Christa & Jackson, under a document titled, "Attorney–Client Contract" (hereinafter "Representation Contract"). Each individual plaintiff was provided a copy of the Representation Contract to review and sign. The Representation Contract generally provides for the scope of the law firm's legal representation and the conditions under which the representation is to take place. The specific contract provisions currently at issue are entitled "Group Governance," and "Settlement and Sharing of Proceeds."

The "Group Governance" provision requires the contract signatory to agree to the establishment of a "steering committee." This steering committee is the "control group" for the entire group of individual plaintiffs. That is, the steering committee is the group of plaintiffs upon whom Christa & Jackson base all of their litigation decisions. Specifically, the contract states that the contract signatory,

> authorize[s] us to conduct your case in all regards in the same manner as we conduct the case on behalf of the members of the steering committee. You agree that we will, under no circumstances, conduct your case in a manner different from the manner in which we conduct the case on behalf of the members of the steering committee. You agree that we may communicate with the steering committee and that a communication to the steering committee shall be deemed to be a communication to you, and to each of the persons we jointly represent in this case.

The size and membership of the steering committee is determined by the majority in interest of the jointly represented client group based on the net cash invested in the Donahue Partnerships.

The "Settlement and Sharing of Proceeds" provision authorizes the attorneys to settle an individual client's claims "on the same terms as those applicable to the personal claims of the steering committee members." The contract further provides that any settlement monies received by an individual client shall be shared by the entire plaintiff group. Each individual client's share of the settlement is to be calculated through a formula based upon

---

1. The Court will treat the Defendants' verbal amendment as a request to reduce the scope of the relief requested. As explained in this Order, the request has no impact on my ruling.

the amount of money that the client invested in the Donahue Partnerships. However, the steering committee has the power to alter the formula, "to reflect facts that may turn up or decisions the judge may make," and where a majority in interest disapproves of a steering committee alteration, the steering committee has the power to direct the law firm to withdraw from representing those plaintiffs identically affected by the alteration.

As the litigation proceeded, the parties were required to participate in settlement conferences with Magistrate Judge O. Edward Schlatter acting as mediator.[2] The evidence and arguments presented at the January 28, 1999 hearing on the disqualification motion demonstrate that this is a case with 200 separate claims, that the levels of potential liability to each individual plaintiff vary according to the specific facts of the individual plaintiff's case, that certain plaintiffs have stronger claims than others, and that each plaintiff deserves the chance to settle his or her claim without being tied to the settlement formula mandated by the Representation Contract. For these reasons, the Magistrate Judge attempted to set up individual settlement conferences with each plaintiff present. This idea was initially rejected by the Plaintiffs' attorney due to his belief that he had full authority to settle on behalf of all of the individual plaintiffs through the steering committee and group governance provisions of the Representation Contract.

Eventually Plaintiffs' attorney relented, and it was agreed that the Plaintiffs would be randomly placed in smaller groups of twenty-five for the purpose of conducting small settlement conferences. Each group was presented with a settlement "pitch" by the Defendants, during which the Defendants discussed their view of the case, the potential outcome based upon current law, and the various risks involved depending on the facts of any one plaintiff's case. At the conclusion of the group conference, the groups would meet with their attorney to discuss the Defendants' presentation. After each group conference and attorney meeting, every member of the four groups consistently stated that they wanted to "stay with the group" and rejected settlement.

Frustrated with the process, Magistrate Judge Schlatter ordered that individual settlement conferences be held. Approximately 15 to 20 plaintiffs appeared and participated in individual conferences. During these conferences, the Defendants made specific offers based upon the facts of that plaintiff's case. After listening to what the Defendants offered, the individual plaintiffs each met with the Plaintiff Group's attorney, and again almost every one of these plaintiffs rejected settlement and opted to "stay with the group." Specifically, only one client out of the 200 person client group settled his claim through this second settlement conference procedure. Upon expressing a desire to settle apart from the group, that person was required to withdraw from the client group and obtain new counsel. Further, the escrow provision of the Representation Contract prevented any one client from receiving settlement proceeds until after every member of the plaintiff group had settled their case.[3] In response to these developments, the Defendants filed a motion objecting to the Representation Contract, and asking the Court to either invalidate certain provisions of the contract, or disqualify Christa & Jackson from representing the Plaintiffs.

## LAW & ANALYSIS

### I. Standing

The Plaintiffs first argue that the Defendants have no standing to attack the

---

**2.** As the presiding trial judge on the case, Judge Sparr entered an Order of Reference on March 7, 1994, referring the case to Magistrate Judge Schlatter for settlement and other purposes.

**3.** To aid the Court in understanding how the Representation Contract's provisions frustrated settlement efforts, Magistrate Judge Schlatter appeared at the January 28, 1999 hearing and described what happened during the settlement negotiation process.

Representation Contract. Colorado law permits third-party attacks on express contracts where the agreement is directly intended to benefit that third party. *Cassidy v. Millers Casualty Insurance Co. of Texas*, 1 F.Supp.2d 1200, 1211 (D.Colo. 1998); *E.B. Roberts Const. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo. 1985). An intent to benefit must be apparent from the agreement terms, surrounding circumstances, or both. *Frisone v. Deane Automotive Center, Inc.*, 942 P.2d 1215, 1217 (Colo.App.1996). In this case, the parties to the contract and the parties opposing the contract are in fact adversaries. The contract is solely between the Plaintiffs and their attorneys, and the facts fail to indicate that the Defendants were ever intended to be third-party beneficiaries of the agreement. Therefore, the Court cannot allow the Defendants to attack the enforceability of a contract to which they are neither a party nor an intended beneficiary.

■■■ Nonetheless, it is clear that the Defendants have standing to request disqualification of Plaintiffs' counsel based upon any ethical violation related to the terms and conditions of the Representation Contract. Although courts generally refuse to disqualify an attorney for a conflict of interest where the attorney's former client has not moved for disqualification, case law gives an opposing party standing to challenge where the interests of the public are so greatly implicated that an apparent conflict of interest may tend to undermine the validity of the proceedings. *Beck v. Board of Regents*, 568 F.Supp. 1107, 1110 (D.Kan.1983); Colo.R. Prof. Conduct 1.7, Comment (stating that opposing counsel may move for disqualification, "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice . . . .") Here, I find there is a clear public policy issue regarding the ability of the Plaintiffs' attorneys to provide individual counsel to individual plaintiffs under the Representation Contract and the Colorado Rules of Professional Responsibility. Consequently, the Defen-

dants have standing to seek disqualification of plaintiffs' counsel.

## II. *Disqualification*

■■■ The Colorado Rules of Professional Conduct provide that:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(c) For the purposes of this Rule, a client's consent cannot be validly obtained in those instances in which a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances of the particular situation.

Colo.R. Prof. Conduct 1.7(b), (c). In cases like the present one, where there is a large group of clients who are not recognized as a single legal entity, the attorney has a lawyer-client relationship with each individual member of the group. ABA/BNA Lawyers' Manual on Professional Conduct § 51:378. The evidence shows that the Plaintiffs entered into the Representation Contract freely and voluntarily and did not seek to have the Court certify the case as a class action. Although the fee provisions in dispute may represent the client's preferences for the handling of the case, it is ultimately the attorney who bears the responsibility of pursuing their client's goals in a manner consistent with the ethical rules. *See* Colorado Rules of Professional Conduct, Preamble (stating that, "[e]very lawyer is responsible for observance of the Rules of Professional Conduct").

In *Hayes v. Eagle–Picher Industries, Inc.,* the Tenth Circuit held that attorney-client agreements which allow a case to be settled without the approval of an individual client are "opposed to the basic fundamentals of the attorney-client relationship." 513 F.2d 892, 894 (10th Cir.1975). Like the Plaintiffs in this case, the Appellants in *Hayes* were part of a large group of individual plaintiffs who were subject to an attorney-client agreement based upon group governance. *Id.* at 892. The *Hayes* attorney-client agreement provided that "majority rule" would govern acceptance of any settlement arrangement. *Id.* The *Hayes* agreement, therefore, created a situation where the majority of the plaintiff group controlled settlement arrangements for the entire group. Here, the Court is faced with an attorney-client agreement that allows a *minority* to control the settlement arrangements for the majority—a far worse proposition.

 As the Court articulated in *Hayes,*

> [i]nasmuch as the attorney is merely an agent for the client in negotiation and settlement, the approval of the client is an all important essential to a settlement which is to be binding, and if this approval is not present the court is placed in a most unfavorable position in enforcing it.

*Id.* at 894. The Representation Contract gives counsel the ability to negotiate settlement for each plaintiff without providing him or her with personalized advisement and without obtaining individual authority to enter into a settlement arrangement. Colorado law states that any provision of an attorney-client agreement which deprives a client of the right to control their case is void as against public policy. *Jones v. Feiger, Collison & Killmer,* 903 P.2d 27, 34 (Colo.App.1994), *rev'd on other grounds,* 926 P.2d 1244 (Colo.1996); *Jones v. Jones,* 117 Colo. 420, 188 P.2d 892 (1948) (stating that it is the declared public policy of Colorado that parties to litigation have the right to control their own cases); *Nichols v. Orr,* 63 Colo. 333, 166 P. 561, 561 (1917) ("[A]ny agreement which deprives the litigant of the right to control his case, before it is finally determined, is void as against public policy").

Applying the Rule 1.7(c) standard regarding client waivers of potential conflicts of interest and the law as set forth in *Hayes v. Eagle–Picher,* I find that a disinterested lawyer would have advised against entering into the Representation Contract because the agreement violates the professional and ethical standards created to regulate the legal profession in the State of Colorado. Further, valid client consent to waive the potential conflict of interest cannot be obtained under the circumstances. Accordingly it is,

ORDERED that the Defendants' Motion to Declare Void and Unenforceable the Group Governance and Settlement Provisions of Plaintiffs' Attorney–Client Contract and to Disqualify Counsel filed July 31, 1998 is GRANTED in part and DENIED in part. The Motion is GRANTED as to the disqualification of Christa & Jackson as counsel of record, and DENIED as to the request that the Court declare the challenged Representation Contract provisions void and unenforceable. Therefore, the law firm of Christa & Jackson is disqualified from representing the Plaintiff Group pursuant to the Representation Contract. This ruling does not apply to Attorney Anne Frick or the law firm of Jacobs, Chase, Frick, Kelinkopf & Kelley, L.L.C. who entered an appearance on behalf of the Plaintiffs on January 27, 1999 since they are not parties to the Representation Contract. It is

FURTHER ORDERED that the Defendants' verbal request of January 28, 1999 to reduce the scope of the relief requested is DENIED as MOOT.